## INGRAHAM *against* HUTCHINSON.

Though ev-
ery person
has, inde-
pendent of
grant or
prescription
a right to
the use of
water on his
own land,
in its natu-
ral course
and quanti-
ty, and may
sustain an
action for
its diversion
or obstruc-
tion, to his
prejudice ;
yet a special
right, differ-
ent from the
general one,
and para-
mount to
the general
rights of
other own-
ers of land
on the same
stream, may
be acquired,
by an exclu-
sive enjoyment for fifteen years, and to this end, it is not necessary, that such enjoyment should have been *adverse* to the claims of those affected by it.

THIS was an action on the case, wherein the plaintiff declared, that he is now, and for many years has been, the owner of a certain grist-mill, and saw-mill, on *Blackledge* river, in the town of *Marlborough*, of great value ; that for many years past, this stream has used to flow through a water-course near his said mills, whereby he has been enabled to work them, without interruption or molestation, to the great benefit of the public, and to his own profit and advantage ; that he has, and for many years past has had, the the right to use and improve the waters of said stream, in this manner, and for this purpose ; yet, that the defendant, on the 1st day of *June,* 1812, erected a dam across said stream, above the land and mills of the plaintiff, and then, and ever since, thereby hath obstructed and impeded the course of said stream, and hath prevented the water from coming to the plaintiff's mills, whereby the plaintiff hath been deprived of his rights as aforesaid, and obstructed in the enjoyment of said stream of water.

Another count stated, that the plaintiff, on the 1st day of *June* 1812, and long before, was, and ever since has been, lawfully possessed of a certain grist-mill, and saw-mill, and their ap-

purtenances, on *Blackledge* river, in *Marlborough*, and of
right, had, for more than thirty years, the use and benefit of
said stream, for the purpose of working said mills; yet the
defendant, well knowing the same, on said 1st day of *June*,
and on divers other days since, wrongfully and injuriously
obstructed the waters of said stream, and prevented and
hindered them from running and flowing in their ancient
course, to the said mills of the plaintiff, and from supplying
the same with water, for the working thereof, in so ample
and beneficial a manner, as during all the time aforesaid it
would and ought to have done, whereby the plaintiff hath
lost much of the use, profit and advantage of his said mills.

On the trial at *Hartford, September* term, 1818, before
*Swift*, Ch. J. and *Brainard* and *Chapman*, Js. the plaintiff
claimed, that he had proved the facts stated in his declara-
tion. The defendant insisted, that he was not liable, be-
cause the dam alleged to have been erected by him, was
*above* the plaintiff's mills. But the court charged the jury,
that when a man had made a dam across a stream, and had
erected a mill, and used and occupied the same for more than
fifteen years, he thereby acquired a right to the use of the
water; and that no man had a right to erect a dam across
the same stream, above such mill, so as to obstruct or divert
the water from its natural course, in such manner as to
injure the mill below. The jury found a verdict for the
plaintiff; the defendant moved for a new trial, on the ground
of a misdirection; and the court reserved the motion.

*Sherman* and *Staples*, in support of the motion, contended,
that the exclusive enjoyment of water in a particular manner,
for the period of twenty years in *England*, or of fifteen years
in this state, establishes the right of such enjoyment in the
party so enjoying it, in such cases only where the enjoyment
has been *adverse* to the rights of others. The principle on
which the right is established, is the presumption of a grant;
and this presumption must arise from an *usurpation* on the
one hand, and an *acquiescence* on the other. If, during the
whole period, one party has done only what he had a perfect
right to do, and the other party has, of course, had no ground
of complaint; no presumption can arise from the act of one,
or the forbearance of the other. Actions have, indeed, been
sustained, for *diverting* the course of a stream, and for *ob-*

structing the passage of the water ; but as every man, independent of occupation or prescription, has a right to the use of water on his own land, in its natural course and quantity, those actions would have been equally sustainable, without an hour's enjoyment.   On the other hand, parties have been protected in the enjoyment of water out of its natural course, and in an artificial manner, after enjoyment for the prescribed period ; but in these cases, the rights of others had been *invaded,* and the enjoyment could not have gone on without their *acquiescence.*   In *Bealey* v. *Shaw,* 6 *East* 208. the grievance stated was an invasion of the plaintiff's natural rights.   The defence set up was, that the defendants had enjoyed the water, in the manner complained of, for a sufficient period to establish a right in them to such enjoyment. It was admitted, on all hands, that the diversion of the water was adverse to the rights of other owners of lands on the river between the *termini* of the sluice.   It was proved to the jury, that whether the defendants had, or had not, become entitled, by enjoyment for a sufficient period, to the use of *a certain portion* of the water, yet they had enjoyed the water *to the extent complained of,* for about 13 or 14 years only ; and therefore, the jury, under the direction of Baron *Graham,* found a verdict for the plaintiff, which the court of King's Bench refused to set aside.   All the judges considered the enlargement of the sluice in 1791, as an invasion of the plaintiff's rights.   So in *Sherwood* v. *Burr,* 4 *Day* 244. the plaintiff's natural rights were invaded.   The grievance consisted in the defendants raising their dam, which was below the plaintiff's, so as to throw back the water upon the plaintiff's wheel, and stop its motion.   The case was the same in principle as though the plaintiff's meadow had been overflowed.   *Holcroft* v. *Heel,* 1 *Bos. & Pull.* 400. was an action for the disturbance of the plaintiff's market.   The defendant had invaded the plaintiff's right ; but as he had maintained an adverse possession for 23 years, it was properly decided, that the plaintiff could not recover.   In *Balston* v. *Bensted,* 1 *Campb.* 463. the defendant had, by cutting a drain in a stone-quarry on his own ground, adjoining to the plaintiff's close, diverted or obstructed seven eighths, or nine tenths of the water, so as to prevent its coming to the plaintiff's use ; an injury at all times actionable.   *Sackrider & al.* v. *Beers & al.* 10 *Johns. Rep.* 241. asserted only the

general principle, that a diversion of water from its natural course, to the damage of another, is a ground of action. *Palmer & al.* v. *Mulligan,* 3 *Caines* 307. *Platt* v. *Johnson & al.* 15 *Johns. Rep.* 213. and *Weston* v. *Alden,* 8 *Mass. Rep.* 136. decided only, that slight and unavoidable inconveniences, resulting to a party from the use of water, by another, in a particular way, without diversion or material obstruction, were *damna absque injuria,* and remediless. An exclusive right of fishery in a public river, is analogous to an exclusive right to the enjoyment of water beyond the bounds of one's own land. But it has been decided by this Court, that such right of fishery cannot be gained by use and occupation in the mere *lawful* exercise of a common right for fifteen years. *Chalker* v. *Dickinson,* 1 *Conn. Rep.* 382. The Court, in that case, say, " It has become an established rule of the common law, that easements may be acquired by uninterrupted possession for fifteen years ; such as rights of way, *flowing another's land, diverting water-courses,* fisheries, and the like. But in every case of this description, the use and possession, in the first instance, are a *usurpation* of the rights of some other person ; and an action would always lie till the fifteen years were elapsed."

*T. S. Williams* and *W. W. Ellsworth,* contra, contended, that where two persons have equal rights respecting any subject matter, whereof the actual enjoyment by one is incompatible, or cannot exist, with the actual enjoyment by the other, if one actually enjoys alone his right, during fifteen years, or more, while the other lies by, and may, but does not, during that time, attempt to exercise, or actually enjoy, his right, the latter shall never do it afterwards, to the prejudice of the former. Many rights, in favour of one person, grow out of, or are essentially enlarged, or otherwise affected, by the *non-user* of another. This principle is the very foundation of the statute of limitations. *Sedgwick,* J. in giving the opinion of the court, in *Dwight* v. *Clark,* 7 *Mass. Rep.* 517. says, " I do not think, that the legal presumption, in relation to a statute of limitations, is, that the debt has been *paid,* if there be no evidence of its existence within the period of limitation ; but that the law, from considerations of public policy, has provided, that such debts shall not be recoverable in courts of law ; laying out of the question any consid-

*New-Haven,*
November,
1818.

Ingraham
*v.*
Hutchinson.

*New-Haven,*
November,
1818.

Ingraham
*v.*
Hutchinson.

eration whether the debt be, or be not paid." The modern doctrine, established by incontrovertible authority, requires, in order to take a case out of the statute, something more than a bare acknowledgment, that the debt has not been paid. 8 *Johns. Rep.* 407. 11 *Johns. Rep.* 146. 15 *Johns. Rep.* 511. 4 *Mau. & Selw.* 457. A recovery upon bonds and legacies, not named in the *English* statute of limitations, after twenty years, is precluded, upon the principle of *neglect,* or *non-user.* An equity of redemption may be lost, upon the same principle. It is upon this principle, that it has, from time immemorial, been held, that where two have originally an equal right, one, by his sole enjoyment, gains an entire and exclusive right to the use of *light, air* or *water,* in the manner in which he has been suffered to enjoy it alone. A different doctrine would be ruinous.

The application of the principle to *light,* is familiar, having been sanctioned by numerous decisions, ancient and modern. 2 *Selw. N. P.* 1089. 2 *Wms. Saund.* 175. *a. b. c.* These decisions are never spoken of, as standing on any *peculiar* principle, or as constituting an exception to the general principles of the common law. They ought, therefore, to be regarded as sufficient for the present purpose. But there are several cases where the same doctrine is laid down in relation to *water.*

It is, however, said, (and this is the only argument we have to contend with) that no right can be acquired in relation to the statute of limitations, by use or enjoyment, unless such use or enjoyment be *adverse....a usurpation.... a wrong,* immediately subjecting the party to an action ; and that all the cases proceed upon this principle. This is not true. It certainly is not, as to the class of cases respecting *light.* Nor is it, as to several of the cases respecting *water ;* as an examination of them will shew. In *Sherwood* v. *Burr,* 4 *Day* 244. the defendant had originally a right to use the water, to the extent claimed by him. This is expressly stated by Judge *Baldwin.* But the court decided, that he had *lost* his right. They said, " Although at first, by virtue of the grant to *Joseph Perry,* the dam might have been raised to its present height; yet, after a usage to the contrary, for so great a length of time, and after other water-works have been erected on the stream above, which must be lost and destroyed thereby, the right ought to be considered as

*New-Haven,*
November,
1818.

Ingraham
*v.*
Hutchinson.

*lost by a non-user of it,* and by an adverse possession inconsistent with such right." Now, in this case, the plaintiff has acquired a right by use; and yet the defendants could not have sued him, at the time the upper dam was built; for the defendants, at that time, had water enough. When the plaintiff first built his mill and dam, he had a right so to do: the defendants might, at the same time, have raised their dam as much as they have since done. Both parties, at that time, might build; and now, as one only did do it, and one only could enjoy the same right, or now can; he that has built and enjoyed for fifteen years, shall continue to enjoy, while the other has lost his right by *non-user.* Where two cannot, at the same time, severally enjoy an equal right, one may gain a precedence, by long user. It can make no difference whether a person is to assert his right, by bringing an action at law, or by taking possession. If he does not expect to lose his right, he must enjoy it, according to its nature: if he will do nothing, it is just that another should gain a sole and perfect right.

In *Balston* v. *Bensted,* 1 *Campb.* 463. Lord *Ellenborough* expressly placed the plaintiff's right upon *twenty years' enjoyment;* and yet his right or enjoyment did not begin by *invasion* or *usurpation:* there never was a moment when the plaintiff could have been sued. The defence set up in that case, is exactly the one made here, *viz.* that the plaintiff's right did not commence *wrongfully.* But Lord *Ellenborough* observed, early in the trial, that twenty years' *exclusive* (not wrongful) enjoyment of water, in a particular manner, completed the right so to enjoy it. In *Bealey* v. *Shaw & al.* 6 *East* 208. 215. Lord *Ellenborough* laid down the same unqualified principle.

In *Thurston* v. *Hancock & al.* 12 *Mass. Rep.* 221. the principle in question seems to have been taken by the court as settled law. In that case, the plaintiff had, within *ten* years, built his house near the line of his lot; so that the defendant, by digging upon his land adjoining, undermined the plaintiff's house, and it fell down, or was necessarily taken down. It is apparent from the remarks of the court, that if the plaintiff's house had been built *twenty* years, they would have decided, that the defendant could not lawfully dig in his land, so as to injure the plaintiff's house.

But it is said, that in *Chalker* v. *Dickinson,* 1 *Conn. Rep.* 382. the court decide, that in order to acquire a right to an easement, by fifteen years' possession, the possession must have been, in the first instance, a *usurpation.* But do the Court say, that where two persons have equal rights, which one only can enjoy, and one actually enjoys his right, expending his property in buildings, &c. while the other lies by, and sees it, but does nothing himself, the latter can, after fifteen years, come forward and assert his original right, to the ruin of the former? Now, the great difference between *Chalker* v. *Dickinson,* and this case, is, that in that case, the rights and enjoyment of both parties, at the same time, were consistent: in this case, the enjoyment by one, so far as it is an injury to the other, is inconsistent with the other's enjoyment; it is necessarily exclusive. In one case, the possession was *uninterrupted;* in the other, exclusive. An uninterrupted enjoyment of a public fishery, by one citizen, is neither exclusive of, nor prejudicial to, the actual enjoyment of the same by another citizen; and the error on the trial of *Chalker* v. *Dickinson,* was, that the court charged the jury, that an *uninterrupted* possession of a common right, was an *exclusive* possession. In this case, it must be conceded, that the possession or enjoyment, by the plaintiff, for fifteen years before the commencement of this suit, so far as he now claims possession or enjoyment, has been exclusive. The enjoyment by one, could not exist, at the same time, with the enjoyment by the other. If *Ingraham* has possessed and enjoyed an undisturbed flow of water to his mill, during the whole of fifteen years past, as is found, then *Hutchinson* has not, during any part of that time, enjoyed the interruption of the same. Indeed, the very existence of this suit, proves, that the enjoyment of the water, by both parties, cannot exist at the same time; and that so far as there is any interference, the enjoyment by one must be exclusive.

SWIFT, Ch. J.  By the common law, every person owning lands on the banks of rivers, has a right to the use of the water in its natural stream, without diminution or alteration; that is, he has a right that it should flow, *ubi currere solebat;* and if any person on the river above him, interrupts, or

diverts, the course of the water, to his prejudice, action will lie. This will give to every one all the advantage he can derive from the water, which does not injure the proprietor of lands on the river below him. But a special right, different from the general one, may be acquired by an adjoining proprietor, by grant, or by such length of time as will furnish presumptive evidence of a grant. In *England*, it has been decided, that twenty years exclusive enjoyment of water in a particular manner, affords a conclusive presumption of a right in the party enjoying it, derived from some individual having the power to make it, or from the legislature ; and in this state, fifteen years exclusive enjoyment will furnish the same evidence. Such exclusive right, however, must be measured and limited by the extent of its enjoyment, and the occupier can no more enlarge it than he can assume a new right. These principles are fully settled in the case of *Brown* v. *Best*, 1 *Wils.* 174. and *Bealey* v. *Shaw*, 6 *East,* 208. A different doctrine has been holden in this state. *Perkins* v. *Dow*, 1 *Root* 535. 537. It has been decided, that the proprietors on the stream above might take any advantage of the water, provided they did not deprive the proprietor below of the necessary use for his kitchen and cattle. In the case of *Howard* v. *Mason,* 1 *Root* 537. it was decided, that a man may divert a stream of water to manure and enrich his meadow, to the prejudice of a mill that had been erected on the stream below, more than twenty years. This is reversing the common law ; and not only gives to the upper proprietors on rivers, the advantages to which the lower are entitled, but denies that even seventy years exclusive enjoyment of water in a particular manner, will confer an absolute right. This last doctrine was over-ruled by the case of *Sherwood* v. *Burr & al.* 4 *Day* 244. The plaintiff had erected a mill more than forty years ago, which had ever since been in constant use. The defendants had erected a mill below, on the same stream, more than eighty years ago, but within ten years had raised their dam so as to flow the water back on the wheel of the plaintiff's mill, and prevent its being used. It was decided, that the plaintiff, by his exclusive enjoyment, for more than fifteen years, had obtained an absolute right to the use of the stream for his mill ; and that the defendants had no right to raise their dam to his prejudice. This decision will clearly warrant the principle

*New-Haven,* November, 1818.

Ingraham
*v.*
Hutchinson.

laid down at the circuit, in this case, that when a man has erected a mill and dam on a river, and has occupied it, without interruption, for more than fifteen years, he acquires an exclusive right, and no one may erect a dam on the same river, above or below such mill, in such manner as to divert or obstruct the water, to the injury of such mill.

It is, however, contended, by the counsel for the defendant, that to gain such exclusive right by possession, it must be adverse to the claim of the person to be affected by it, so that he could maintain a suit ; otherwise, there is no acquiescence ; and that, in this case, there was no such adverse possession. But the rule is laid down without such qualification : the exclusive enjoyment alone is sufficient to create the right. In the case of *Sherwood* v. *Burr & al.* the defendants could never have maintained an action ; for the dam of the plaintiff was no injury to them : yet the court held the possession to be sufficient to gain an absolute right.

In this opinion, TRUMBULL, EDMOND, SMITH, BRAINARD, HOSMER and CHAPMAN, Js. concurred ; the two latter, solely on the authority of *Sherwood* v. *Burr & al.*

GOULD, J. As at present advised, I think, that the jury were misdirected, and that there ought to be a new trial. If there were other members of the court entertaining doubts upon the question, I should be desirous of further time for deliberation ; but as the opinions of my brethren are settled, I should not wish to delay the decision, for the mere purpose of maturing my own.

As easements, and incorporeal interests, are not within the statute of limitations ; courts of justice have virtually extended the benefit of that statute, to those who have been long in the exercise, or enjoyment, of such rights, or interests, by the application of the doctrine of *presumption :* a doctrine, founded in sound policy, and of great practical convenience. And though the principle of quieting long possession lies at the foundation of this doctrine ; it must, still, have some limit, and be governed by some definite principle. It has, therefore, been framed, and wisely framed, in strict *analogy* to the statute of limitations, or, as is sometimes expressed, in *imitation* of that statute. And according to my present view of the subject, a presumption

*New-Haven,*
November,
1818.

Ingraham
*v.*
Hutchinson.

from lapse of time, cannot, on principle, be conclusive upon incorporeal rights, except in circumstances, in which the statute would *bar* the possessory title to corporeal hereditaments. But the statute never operates, as a bar to a right, once existing, except where one is *wrongfully ousted* of his possession, and voluntarily acquiesces in the wrong, for twenty years, under the *English* statute, or fifteen, under ours. In other words, there must have been a *usurpation* of right, by one party, to the *injury* of the other, and for which the latter might have maintained an action, before the expiration of the term, prescribed in the statute; or the original right is not barred. Hence, though the *ouster* of a particular tenant, for twenty years, or more, is a bar to *his* right of entry; it is not so to him in remainder, or reversion; since the wrong was one, of which *he* could not complain, during the continuance of the particular estate. And in the case of *Bradbury* v. *Grinsell*, (*Mich.* 41 *Geo.* 3. *K. B.*) the same distinction was applied to the case of an *easement*, even after an uninterrupted enjoyment of it for fifty-two years, upon lands in the possession of particular tenants. 2 *Wms. Saund.* 175. *d. notis.* The reversioner, in that case, was holden not to be affected by this great length of enjoyment, *because* he had not *acquiesced in any violation of his own rights.* When, on the contrary, the enjoyment of an easement, or of any incorporeal thing, must, if unaccompanied with title, have been an *infraction of another's right;* the voluntary acquiescence of the latter, for fifteen years, furnishes presumptive evidence of a grant, or agreement, legalizing such enjoyment. For it is a fair presumption, that no one would voluntarily, and gratuitously submit, for such a period of time, to a continued trespass, or other infraction of his legal rights. In such cases, therefore, there is a reasonable foundation for the presumption of a grant. Upon this principle it is, that one may, by length of adverse user, acquire a right of way, over the land of another, to divert a natural stream from it, or to overflow it.

But where such enjoyment, by one party, has occasioned no *injury*, or *inconvenience*, of which the other could have complained, there is no such *acquiescence*, by the latter, as to raise any presumption whatever; no acquiescence, in a sense, which implies *submission* to a violation of his own rights: and his silence, or inaction, cannot, therefore, upon any

*New-Haven*,
November,
1818.

Ingraham
*v.*
Hutchinson.

principle, I think, be construed into a presumption of his having granted away, or abandoned, any of them.

The doctrine laid down by the Chief Justice of this Court, in *Chalker* v. *Dickinson*, 1 *Conn. Rep.* 382., and in which all the Judges, who gave opinions in that case, concurred, is, as I understand it, strictly conformable to these principles. It is said, in that opinion, " easements may be acquired by uninterrupted possession for fifteen years ; such as rights of way, &c. But in every case of this description, the use and possession, in the first instance, are a *usurpation* of the rights of some other person ; *and an action would always lie, till the fifteen years were elapsed.*" This language expresses, very exactly, my present view of the subject.

If I could regard the determination in *Sherwood* v. *Burr,* as in point, for the plaintiff ; I might feel myself bound by that decision : but I cannot so consider it. In point of precedent, that case does not, in my judgment, compare with the present ; and the reasoning of the Chief Justice, in delivering the opinion of the Court, was, substantially, conformable to the principles I have just advanced. My reason for considering the cases unlike, in point of precedent, is, that the former did not, according to my view of it, depend at all upon *length* of enjoyment, nor, of course, upon the doctrine of presumption. The plaintiff, in that case, having had, confessedly, an original and *natural* right to use the stream, as he had done, the casting back of the water upon his wheel, was an injury, for which he might have recovered, if his mill had then stood but a year, or a day. And the opinion of the Court recognizes the necessity, (in order to found a presumption from length of enjoyment) of a possession " *adverse* and exclusive," in *analogy* to the statute of limitation ; and this analogy requires, as I have remarked already, that the defendants should have voluntarily acquiesced in a *violation of their rights.*

Now, in the present case, the parties, or those under whom they respectively claim, had, originally, a natural and equal right to the use of the stream in question. If the defendant had *diverted* the stream from the plaintiff's land ; or if the plaintiff had, by obstructions, cast it back, and overflowed the land of the defendant ; and the injury had been acquiesced in, for fifteen years, on either side ; a grant might now be presumed, in favour of one, or the other, of the parties.

*New-Haven,*
November,
1818.

Ingraham
*v.*
Hutchinson.

And the same thing might be said of any *wrong*, in general, of the same continuance, on one side, *submitted to*, on the other. But no such case as this is before us. The use, which the plaintiff has made of the stream, has been neither a legal injury, nor an inconvenience of any kind, to the defendant. It was nothing, of which the defendant had any right to complain. He has, therefore, acquiesced in no usurpation of his rights ; and has been guilty of no *neglect*, in not asserting them sooner. For it would seem extraordinary, to charge a man with neglect, for omitting to seek redress, where there is no wrong ; or for not complaining, where there is no ground of complaint. And the only principle, upon which the defendant can be supposed to have forfeited his natural right to use the stream in question, as he now does, must be, that he did not build his mill, within the fifteen years, whether it would, then, have been of any use to him, or not—and whether he was in a condition to build it, or not.

And what, on the other hand, is the injury of which the plaintiff complains ? It is not, that the stream has been *diverted* from his mill. If this had been done, he would, undoubtedly, have a right of action, whether his mill had stood fifteen years, or but one year. But the water is still transmitted to him, in its natural channel ; and the only wrong complained of is, that part of it is interrupted in its course, and delayed in arriving at his wheel. This brings the case directly within that of *Palmer* v. *Mertigon*, 3 *Caines*, 307. ; a case, in which it was expressly decided, (by a divided opinion, it is true,) that under circumstances, precisely like the present, such a *temporary interruption* of a stream, there being no *diversion* of it from the plaintiff's mill, was not a ground of action. The case of *Weston* v. *Alden*, 8 *Mass. Rep.* 136. was determined by the Supreme Court of *Massachusetts*, upon the same principle. In that case, which was an action for diverting an ancient water-course from the plaintiff's meadow, the defendant, who owned land above, upon the stream, had let the water out of its banks, into sluices, to irrigate his own land, but returned it into its natural bed, before it reached the plaintiff's meadow ; so that it still passed the plaintiff's meadow, but in a quantity greatly diminished, by absorption upon the land of the defendant, and evaporation : in consequence of which, the meadow of the plaintiff was greatly damaged. But though the plaintiff, and

those, under whom he claimed, had before, from time immemorial, had the benefit of the *undiminished* stream, to fertilize the meadow in question; the court held this interruption and diminution of the stream, to be *damnum absque injuria.*

Of the *English* cases, none, which have been cited for the plaintiff, are in point; and from the short examination, I have been able to give them, my first impressions are, by no means, weakened. The case of *Bealey* v. *Shaw* is wholly irrelevant to the present question. The plaintiff's right was not founded upon *presumption, from length of time.* Indeed, at the time of the injury complained of, he had used the water but twelve years : and his right of action would have been complete, if he had used it, but one year, or one hour. For the *gravamen* was the *diversion* of the water of a river, to the damage of the plaintiff's mills below; and this was, confessedly, a violation of his natural right to the use of the stream, unless a right so to divert it, could be presumed, from the fact, that the defendants, and those under whom they claimed, had, for upwards of seventy years, diverted a *smaller portion* of the water. And the only point decided, upon the question of presumption, was, that a right, in the defendants, to divert the *whole* stream, could not be presumed from their having, for any length of time, diverted a *part* of it. It is true, that the right of the defendants to divert *that part* of the water, which had been so long diverted, was admitted, on both sides, at the bar, as well as by the court; and upon the principle, for which I have contended, the right was, so far, undeniable. For no part of the water diverted, ever returned to its natural channel, till after it passed the plaintiff's mills. The original diversion was, therefore, a plain act of *usurpation,* of which those who then owned the plaintiff's land, might have complained, but in which they, and those claiming under them, had *acquiesced,* till it was too late to complain. Great stress has been laid, however, upon an observation of Lord *Ellenborough,* in the last case, that " twenty years' exclusive enjoyment of the water, in *any particular manner,* affords a conclusive presumption of right, in the party so enjoying it." But is it to be taken for granted, that this observation was meant to include an enjoyment, commencing, and continued, *rightfully ?* It was probably made with reference to the case then under consideration, or to that which had been stated, by way of supposition, in the observation

*New-Haven,*
November,
1818.

Ingraham
*v.*
Hutchinson.

immediately preceding : a case, which supposes the enjoyment to commence in *usurpation.* In the case of *Bealey* v. *Shaw,* then, there is nothing, I trust, that can aid the plaintiff's claim.

In *Holcroft* v. *Heel,* 1 *Bos. & Pull.* 400. it was decided, merely, that the grantee of a market, by *acquiescing,* for twenty years and upwards, in a *disturbance* of his franchise, loses his right to recover for the injury. The use of the defendant's market, in that case, commenced in wrong, and the plaintiff submitted to it for twenty-three years. The case is, therefore, foreign to the present question.

The *Nisi Prius* case of *Balston* v. *Bensted,* 1 *Campb.* 463. was one, in which the defendant had cut off, upon his own land, and thus diverted, the subterranean flow of a natural spring of water, which issued above ground upon the plaintiff's land, to the damage of his bath, reservoir, and mill, the former of which had stood upwards of twenty years. Now, the use which the plaintiff had made of the water, for this period, had not, I admit, affected any right of the defendant. And still, the rule of presumption, arising from the plaintiff's length of possession, was applied, in deciding the case. But I am unable to perceive, why the plaintiff's right to recover would not have been the same, if his works had been erected less than twenty years, or had not been erected at all. For his natural right to the use of the spring was as absolute, I conceive, as if the water had flowed, in a rivulet upon the surface, through the defendant's land, and his own ; in which case, the diversion of the water would have been an infraction of his natural right, though the diversion had commenced immediately after his title to the land accrued. This case, therefore, is not a precedent for the present.

In the single instance of obstructing what are called *ancient lights,* I acknowledge my inability to account for the adjudged cases, by the distinction, which I have been endeavouring to maintain. Whether the *English* rule, in this class of cases, has ever been recognized, or brought under judicial consideration, in this country, I have been unable to learn. And I am by no means certain, that I fully understand the nature of those cases, to which the rule has been applied, in the *English* courts. If, by lights, which are protected against obstruction, by twenty years enjoyment, be meant such as *project* over the land of the adjoining proprietor ;

New-Haven,
November,
1818.

Ingraham
v.
Hutchinson.

the cases would fall directly within what I consider the true principles of the rule of presumption. For such a projection would be an *invasion* of the adjoining owner's rights : *Cujus est solum, ejus est usque ad cœlum*. And I confess, I have sometimes suspected, that the cases, to which the rule is meant to apply, were of this kind : since I find in them, in repeated instances, the expressions, " the windows were put *out*" at such a time—" the lights were put *out* and enjoyed," &c. 2 *Wms. Saund*. 275. *b. notis*. 11 *East*, 372. In *Daniel* v. *North*, 11 *East*, 372. the windows in question are called " the *encroaching* lights ;" and the adjoining tenant is represented, in the argument, as having been guilty of " *laches*, or acquiescence, in *that*, which was a *prejudice* to the inheritance." *Id*. 373. And in the case of *Dougal* v. *Wilson*, the second action of the kind, I believe, of which we have any knowledge, *Wilmot*, Ch. J. speaks of the possession of windows, for a great length of time, as " amounting to a grant of the liberty" (not of holding them free from obstruction, but) " of *making* them," or, to " evidence of an *agreement to make* them." Now, the language used, in these instances, is to me hardly intelligible, except upon the supposition, that the lights in question were, originally, *encroachments*.

But admitting this supposition to be, as it very probably may be, entirely groundless—I still cannot, for several reasons, regard this class of cases as governing the present. In the first place, supposing the lights, protected by the rule, not to have encroached upon the adjoining proprietor— nothing can be more unsatisfactory to my mind, than the *reason*, originally assigned for the rule, *viz*. that as twenty years possession would give title in ejectment to a *house;* the owner ought not, after that length of possession, to be disturbed in the *lights*, belonging to it. But if, as I am now supposing, (and as must be assumed, to make out the necessary analogy, to the present case,) the house and lights were both, at first, *exclusively* upon, or over, the land of the *owner of the house;* the same reason would protect the lights against obstruction, from the moment they were made : for he would certainly be entitled to the undisturbed occupation of the house, from the moment of its erection. Again : upon the present supposition, the rule, in the case of lights, is, I think, unquestionably *anomalous;* and therefore, not to be extended by analogy. Besides : to what *extent* does this

privilege, or protection, go, where it actually exists? Does the adjoining proprietor lose all right to erect a building upon his own land, whenever it would, in the least degree, *diminish* the light of a privileged window? Is he precluded from building at the distance of three rods, or one rod, or even at a less distance, from his neighbour's windows? I am not aware, that the rule was ever claimed to extend so far. It goes no further, as I understand it, than to protect windows, which have been long used, from being *obstructed*, or, as it is often expressed, in the books, " stopped up." To apply these cases, then, by analogy, to the present question, it would be necessary, that the defendant in this action should have *diverted* the stream, or, in some way, have *deprived the plaintiff of the use of it.* Whereas the complaint, here, is only of a temporary interruption of part of the stream, the whole of which eventually passes by the plaintiff's mill : an interruption, exactly similar to that in *Palmer* v. *Mertigon,* and much less than that in *Weston* v. *Alden ;* in both which cases, it was resolved, that the damage sustained was no *legal injury.*

One further consideration, which, though certainly not conclusive in any case, is, at least, entitled to attention, has some influence on my mind. The same state of facts, upon which we are now to decide, must, in all probability, have occurred, in very numerous instances, long before this time, both in *England,* and in this country. But it does not appear, than an action has ever been sustained, in such a case.

Upon the whole, I find myself, at present, constrained to think, that the plaintiff has no cause of action.

PETERS, J. gave no opinion, having been formerly of counsel in the cause.

New trial not to be granted.