### KING and others *against* TIFFANY and others.

The proprietor of land, through which a stream of water flows, has a right, in the absence of any qualification by grant or fifteen years adverse user, to the unobstructed use of that water *ut currere solebat.*

Prior occupation of water in a particular manner, for a period less than fifteen years, does not affect the rights of other proprietors on the same stream.

Therefore, where *A.*, the proprietor of an ancient mill on a stream of water below the mill of *B.*, erected in 1802, on the same stream, raised, in 1818, his dam higher than any former dam on the same site, thereby throwing back the water to *B's* mill, but not so as to produce any injury thereto until 1824, when *B.* enlarged and lowered the water wheel of his mill, in consequence of which it was obstructed, by such back water; it was held, in an action brought by *B.* against *A.* for such obstruction, that the plaintiff was entitled to a recovery.

Where it was claimed, on the trial of such action, by the plaintiff, that the injury in question resulted from the defendant's raising his dam, and by the defendant, that it was not so produced, but by the plaintiff's lowering his wheel; and the court directed the jury, that if they should find the facts as claimed by the plaintiff, their verdict must be for him, otherwise for the defendant; and the plaintiff obtained a verdict; it was held, on a motion for a new trial by the defendant, that he was not entitled to have the verdict set aside, on the ground of an erroneous or imperfect direction.

THIS was an action on the case, for raising the water of the river *Scantic,* by means of a dam, so as to interrupt the plain-

tiffs in the use of the water, at their forge above, on the same stream.

The cause was tried at *Hartford, February* term, 1832, before *Williams*, J.

The plaintiffs' forge and dam were erected in the year 1802 ; and they claimed, that they had a right to the use of the water in the same manner as they had enjoyed it for fifteen years after that time.   They further claimed, that the defendants, in the *Spring* or *Summer* of 1818, owning a grist-mill on the stream below, rebuilt and repaired their dam, and raised it materially higher than any former dam on that site ; that in 1829, the defendants built a new dam still higher than that of 1818 ; and that by means of one or both these dams, the water was thrown back further than it formerly was ; and that the injury complained of in the declaration was thereby produced.

The defendants denied, that either the dam of 1818 or that of 1829, was raised higher than it was before ; or that the water was, by means of either of them, thrown further back upon the plaintiffs than it previously had been, so as to produce the injury complained of.   But they claimed, that their mill is an ancient mill, and that in the year 1824, the plaintiffs enlarged their hammer wheel and lowered it three inches ; and that the injury in question was to be ascribed to this cause rather than to the raising of the water by means of the defendants' dam.

It appeared, that the principal injury complained of, by the plaintiffs, was to the hammer wheel ; and much testimony was adduced, by the parties, in support of their respective claims.

The judge instructed the jury, that if they should find, that the defendants had raised the water, by means of their raising the dam of 1818, or that of 1829, or both of them together, so as to produce the injury complained of, they must find for the plaintiffs ; otherwise, for the defendants.

The plaintiffs obtained a verdict ; and the defendants moved for a new trial for a misdirection.

*N. Smith* and *Chapman*, in support of the motion, contended, That the judge ought to have charged the jury, that if the plaintiffs enlarged and lowered their hammer wheel in the year 1824, in the manner claimed by the defendants, the verdict ought to be in their favour.   The plaintiffs, undoubtedly, had a right to have their hammer wheel move unmolested, in the

manner it had done for a period of thirty years ; and the defendants had no right to do any thing to interfere therewith. But if the defendants could make a more profitable use of their privilege than they had done, without injury to the plaintiffs' wheel, as it then stood, they had a right so to do. *Hatch* v. *Dwight* & al. 17 *Mass. Rep.* 289. 297. 3 *Kent's Com.* 353. 2 *Bla. Com.* 403. *Bealey* v. *Shaw,* 6 *East* 208. *Brown* v. *Best,* 1 *Wils.* 174.

The defendants had an ancient mill ; and when they raised their dam, in 1818, it injured no one. From that time forward they were in possession of the additional privilege, and exercised it until 1824, without injury to or complaint from any one. Then what took place ? The defendants continued to enjoy their rights as they had done before ; and if the plaintiffs had done no more, they would have had nothing to complain of. But then they lowered their hammer wheel ; and this produced the grievance. Was it not their own act ? Ought the defendants to be responsible for the consequences ? Clearly not. But according to the judge's charge, if the defendants had raised their dam, thereby impeding the plaintiffs' hammer wheel, the jury were bound to give a verdict for the plaintiffs, though the plaintiffs had lowered their wheel, and *that act* produced the obstruction and injury complained of.

*Hungerford* and *Toucey*, contra, contended, 1. That the plaintiffs having enlarged and lowered their hammer wheel in 1824, did not preclude them from a recovery in this case. The proprietor below has no right to throw back the water, at all, upon his neighbour above, unless he has acquired the right, by grant or fifteen years' user. It is difficult to see why the plaintiffs should not enjoy the unobstructed use of the water, flowing *ut currere solebat*, on their own site.

2. That if the law were otherwise, on this point, the present verdict ought not to be set aside. The injury complained of, was, the obstruction of the plaintiffs' wheel, by back water. The plaintiffs claimed, that this was done, by the defendants' raising their dam. The defendants denied the fact, and claimed, that it was done, by the plaintiffs' lowering their wheel. The fact thus asserted and denied was submitted to the jury, with the simple direction, that if they should find it according to the plaintiffs' claim, the verdict must be in their favour ; if according to the defendants' claim, in their favour. The

jury, under this direction, found for the plaintiffs. Now, what have the defendants to complain of? The only point in controversy was *a matter of fact ;* and *that* has been found against them. Had they claimed, on the trial, that if, notwithstanding this fact, the plaintiffs lowered their wheel, in consequence of which an injury accrued to them, by means of the defendants' back water, they were thereby precluded from a recovery ; and if the defendants had prayed the judge so to instruct the jury ; and the judge had decided otherwise, or had omitted to give any *direction* on the point ; in that case, the question would have been raised. But this course was not taken.

WILLIAMS, J. The question in the court below, was, whether the plaintiffs had sustained an injury, by the defendants' raising the dam of 1829, or continuing the dam of 1818, if that was then raised. This necessarily involved the enquiry, as to the cause of the injury ; whether it was caused by lowering the hammer-wheel, or by raising the dam. The former question must have been involved in the latter ; for if the injury arose from the act of the plaintiffs, it must follow, that it did not not arise from the act of the defendants ; and on the contrary, if it arose from the act of the defendants, it would preclude the idea that it happened from the alterations made by the plaintiffs.

The charge was as broad as the claim, and was simply this ; were the plaintiffs injuriously affected, by the acts of the defendants? If the defendants wished for the opinion of the court, whether as the plaintiffs had lowered and enlarged their hammer-wheel, they could recover for any injury done to that wheel, in setting back the water, by means of the defendants' dam, they should have presented that question distinctly to the court. It was not presented in any other manner, than as involved in the other question submitted to the jury. The defendants cannot claim, therefore, to have the verdict set aside, on account of the court's omitting to charge the jury more particularly on that point ; but as the facts stated shew, that this question must be settled before the rights of those parties are ascertained ; and as it is stated, that another suit is pending upon the same subject ; and as the point has been discussed at the bar, and considered by the court ; further litigation may be saved, by expressing an opinion upon that part of the case.

It is not denied, that those who own the adjoining soil, have a right to require, that the water shall flow in the accustomed manner. The defendants therefore admit, that the plaintiffs have the right to the enjoyment of the water, in the manner they had enjoyed it fifteen years before; but they say, that this enjoyment was by use of a wheel of certain dimensions and of a certain height; and that when the plaintiffs enlarged that wheel and sunk it, they claimed a right which they had not been accustomed to enjoy; and that he who applies the water of a running stream, so as not to interfere with the established rights of others, may lawfully do so. Of course, they claim, that in 1818, their dam was lawfully raised, as it did not then interfere with the established rights of the plaintiffs; they not having then altered their hammer-wheel. This is certainly an ingenious application of a familiar principle; but is it a correct one? The first occupant has a right to the use of water, taking care not to interfere with the established rights of others. What, then, are the established rights of the plaintiffs? Is it a right to have so much water only as will carry such a wheel, and subserve the purposes of such a mill as they have formerly had? Or have they a right to have the water flow in the manner that it has been accustomed to flow for fifteen years? If the former principle is adopted, then a valuable privilege, which has not been improved, would be lost, by a prior occupation below or above, although that occupation was but a few years, or perhaps months. Thus, too, an occupation less than fifteen years would confer a right. This would be extending the principle of prior occupation much farther than it was carried in *Ingraham* v. *Hutchinson,* 2 *Conn. Rep.* 584. There it was adjudged, that a prior occupation of a stream of water for fifteen years would confer a title upon the occupant, although the possession was not strictly adverse. This was doubted, by a distinguished judge; but it was never claimed, that occupation for a less time could confer any such right. In the case of *Platt* v. *Johnson* & al. 15 *Johns. Rep.* 213. in the state of *New-York*, this question seems to have arisen, and it was claimed, as it is here, that the first occupant acquired a title; and the case of *Bealey* v. *Shaw*, 6 *East,* 208. was pressed there, as it was here; but Ch. J. *Thompson* says: "The plaintiff's right, if any legal right exists, must grow out of the mere fact of his having first erected his mill. To give such an extension to the doctrine of occupancy, would be danger-

ous and pernicious in its consequences." 15 *Johns. Rep.* 218. The same principle is recognized, by the supreme court of that state, in *Merritt* v. *Brinkerhoff* & al. 17 *Johns. Rep.* 306. 320. It is also recognized in the *English* courts; and although in *Saunders* v. *Newman*, 1 *Barn. & Ald.* 258. the new wheel of the plaintiff was of no greater dimensions than the old one, yet the same principle, it is believed, governs. There, the plaintiff, the owner of an ancient mill, rebuilt it, and put in a wheel of different dimensions, but requiring less water, the level of the water continuing the same. He brought his action against the mill owner below, for penning up, and forcing the water back upon the plaintiff's wheel. The judge at the circuit, held, that as the plaintiff had not enjoyed his mill in the state in which it then was, for twenty years, he could not recover. But this judgment was reversed; and Lord *Ellenborough* says: "If by any alterations lower down the stream, the water be prevented from escaping as it has usually done, and that be to the prejudice of the owner of the mill, it seems to me to form the ground of an action against the party so obstructing the water." And *Abbott*, J. says: "When a mill has been erected upon a stream, for a long period of time, it gives to the owners a right that the water shall continue to flow to and from the mill in the manner in which it had been accustomed to flow, during all that time. The owner is not bound to use the water in the same precise manner, or to apply it to the same mill; if he were, that would stop all improvements in machinery. If indeed the alterations made from time to time prejudice the right of the lower mill, the case would be different; but here, the alteration is by no means injurious, for the old wheel draws no more water than the new one."

It does not appear, in this case, that the cause of the obstruction existed before the new wheel was put in; but the reasoning of the judge proceeds upon the principle, that the proprietors of the upper mill had the right to have the water run as it had been accustomed to run, and whether he enlarged or lowered his wheel, if he did not alter the flowing of the water or its level, his right must be the same. The fact that the old wheel drew no more water than the new one, is alluded to as strengthening the argument in that case, but not as the foundation of it; unless we are to take for granted, that the proprietor of the lower mill had a pre-existing right to divert the water from its accustomed course.

In accordance with this opinion is *Luttrel's* case, 4 *Co. Rep.* 87. where it was held, that a man who prescribed for a water course for a mill, " might alter the mill into what kind of a mill he pleased, provided always that no prejudice should thereby accrue, either by diverting or stopping the water as it was before."

The plaintiffs, then, had the right to alter the dimensions of their wheel, if thereby they did not prejudice the subsisting rights of the defendants. And the defendants could have no right, unless their having raised their dam six years before gave them such a right ; in other words, unless an occupation of six years gave them the same right that an occupation of fifteen years would have done.

It is not pretended, that such an occupation would give a right to flow water back upon the land of another ; but it is claimed, that a different principle is to operate in case of an easement ; that though fifteen years enjoyment must be had to give a right to set the water back upon the land of another, yet prior occupation only will give a right to set back the water upon another mill site, when the land is not thereby injured. No case has been cited to support this position, unless it be one from *Massachusetts ;* but the defendants rely upon the general doctrine laid down in the writings of the *English* and *American* commentators. 2 *Bla. Com.* 403. 3 *Kent's Com.* 358. From the general expressions made use of, by these eminent jurists, I do not believe, that it can be inferred, that they intended to make such a distinction ; especially, as they refer to no authority to support the position. But in *Hatch* v. *Dwight* & al. 17 *Mass. Rep.* 289. 296. *Parker*, Ch. J. says, that the owner of a mill site, who first occupies it, by erecting a dam and mill, will have a right to water sufficient to work his wheels, if his privilege will afford it ; though thereby he renders useless the privilege of another upon the same stream ; and so, if the other had abandoned his site. But if this doctrine was admitted, it seems to me, that it would not extend to a case like this ; that the party below might so use the water below as to affect the privilege above, already occupied, because that privilege had not been heretofore used to the best advantage. The principles applicable to this subject are well laid down, by the Vice-Chancellor of *England*, in the case of *Wright* v. *Howard*, 1 *Sim. & Stu.* 190. The right to the use of water rests on clear settled principles. *Prima facie,*

the proprietor of each bank of a stream is the proprietor of half the land covered by the stream; but there is no property in the water. Every proprietor has an equal right to use the water which flows in the stream; and consequently, no proprietor can have the right to use the water to the prejudice of any other proprietor. Without the consent of the other proprietors, who may be affected by his operations, no proprietor can either diminish the quantity of water, which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above. Every proprietor who claims a right either to throw the water back above, or to diminish the quantity of water which is to descend below, must, in order to maintain his claim, prove an actual grant or license from the proprietors affected by his operations, or must prove *an uninterrupted enjoyment of twenty years.*"

These were the principles of our own Court, in *Hutchinson* v. *Ingraham*; and nothing in *Bealey* v. *Shaw*, it is believed, contradicts these principles.

No action will lie, but by him who sustains an actual injury; but it will lie at any time within the fifteen or twenty years, when the injury happens to arise in consequence of a new purpose of the party to avail himself of his common right. If these principles are correct, it may be admitted, that from the year 1818 to 1824, the plaintiffs could sustain no action for raising the water by the dam of 1818, because they could prove no injury; but as six years occupation gave the defendants no title, the plaintiffs' right is not barred, when in 1824 they wished to avail themselves of their common right in consequence of a new purpose. Each party had a right to use the water as it had been accustomed to flow until 1818; at that time, each had a right to vary its use, so long as thereby the others were not injured, and no longer, unless they so continued to use it for fifteen years. The defendants did vary their use of it, and in less than fifteen years it did affect the plaintiffs. They now only ask, that the water shall flow as it has been accustomed to flow; and I do not see upon what principle the defendants may interpose to prevent it. Neither party shall so use it as to prevent *its flowing in* the accustomed manner, without an actual grant, or such a continued enjoyment, as is evidence of it. A contrary doctrine would, as suggested by *Abbott*, J., prevent improvements in machinery, and would tend to renew

*Hartford,*
*June, 1832.*

King
*v.*
Tiffany.

those contests for priority, which used to exist among the " sturdy occupants" of ancient days.

I think, therefore, the charge was correct; and that the motion for a new trial must be denied.

HOSMER, Ch. J. and PETERS and BISSELL, Js., were of the same opinion.

DAGGETT, J. In the opinion expressed by the Court, in this case, I cannot agree.

It appears, by the motion, that the defendants insisted, that though the plaintiffs had an undoubted right to the use of the water as it had been used, yet if the defendants, by their dam below, caused the water to flow back so as to obstruct the hammer wheel of the plaintiffs, and that this obstruction was occasioned by the lowering of the wheel in 1824, then so far as regarded that obstruction, the injury was produced by the plaintiffs' act; and therefore, the defendants were not responsible for it. The Court, if I understand their decision, deny the principle thus asserted by the defendants; and thus far I dissent. In my judgment, the principle is just and legal. The established doctrine is, that an exclusive appropriation of water in a particular manner, for twenty years, in *England,* raises a presumption of a grant of the right. *Brown* v. *Best,* 1 *Wils.* 174. 3 *Kent's Com.* 356. 2 *Bla. Com.* 403. In *Connecticut,* fifteen years instead of twenty operates the same effect, in analogy to our statute of limitations, which takes away the right of entry after fifteen years, into lands holden adversely. The party claiming the use of water, under this rule, must show, that the use of it has been uniform and unvaried, because his title is founded on the presumption of a grant; and his right is, therefore, commensurate with the use, as that shows the extent and measure of his grant. What was then the right of the plaintiffs to this water in 1818 or 1829, when the dam of the defendants was, as the plaintiffs insisted, raised? They might use it as fully and extensively as it had been used, and no more so. If the defendants raised their dam, so as to injure, in any respect, their land, or to obstruct their wheel, as it had stood for thirty years, or even for fifteen, they must have been responsible for the injury. But the plaintiffs, as the defendants insisted, had lowered the hammer wheel, in 1824; and they further insisted, that if the injury to the wheel

arose or accrued to it, by its new position, and would not have happened, had it continued in the position in which it was before, then they had caused no injury to the plaintiffs, but it was caused by their own act in lowering their wheel. And this principle I deem correct; and that the jury should have been so instructed.

There was no pretence, that the defendants had unnecessarily or wantonly raised their dam. It is then to be presumed, that it was done for the more successful operation of their mill, and the more complete enjoyment of their privilege.

I am not aware of any principle or decision opposed to the doctrine by me advanced. In *Sherwood* v. *Burr & al.* 4 *Day* 244. and in *Ingraham* v. *Hutchinson,* 2 *Conn. Rep.* 584. it was decided, by this Court, that the special right of the use of water may be acquired, by an exclusive enjoyment for fifteen years, though there had been no adverse claims to such enjoyment. This was upon a divided opinion of the Court. Without questioning the propriety of this decision, the doctrine is now carried to a much greater extent. It goes to the extent, if I mistake not, that an individual, who has obtained, by use for fifteen years, a special privilege to water, may vary that use, and if obstructed in his new and varied use of it, may recover in damages for such obstruction.

In *Brown* v. *Best,* 1 *Wils.* 174., the point of the decision was, that the defendant might *cleanse* his pits, keeping them as they were before, but he could not *enlarge them.* "If I have right from usage," say the Court, "as *currere solebat,* I have the right in such manner as the usage has been." This, as it seems to me, is the only legal principle; and upon this ground the plaintiffs' wheel, when lowered within fifteen years, and after the dam of the defendants was raised in 1818, was unprotected against the flowing back of the water, unless it was unnecessarily or wantonly done. They might as well have claimed damages against the defendants, for obstructing, by their *dam,* any new and artificial conveyance of the water, by which the operation of their old wheels was impeded. This is not the true doctrine of *currere solebat.*

In my opinion therefore a new trial ought to be granted.

New trial not to be granted.