Hayden v. Dutcher.

PETER P. R. HAYDEN

v.

BENJAMIN C. DUTCHER.

An easement of light and air, supplied to the windows of one person from the premises of another, cannot be acquired in this state by a mere user for twenty years under a claim of right.

Hayden *v.* Dutcher.

On application for an injunction, heard on bill and answer.

*Mr. Charles Borcherling,* for complainant.

*Mr. George W. Hubbell,* for defendant.

The Vice-Chancellor.

The decision of this case involves the solution of a single problem : Is the doctrine of the common law of England, in respect to the acquisition of an easement in light and air by adverse user, in force in this state ?

The complainant seeks to have the defendant enjoined from erecting a wall on his own land, which will effectually close up and render useless eighteen windows in the complainant's building, overlooking the defendant's garden. The lands are situate in the city of Newark. Though the answer denies the fact, it will be assumed, for present purposes, that the complainant's windows have existed, just as they now are, for more than twenty years prior to the commencement of this suit, and that the complainant, and those under whom he claims, have used and enjoyed them continuously, under a claim of right, without dispute, for for the whole of that period. The case made by the bill, puts the complainant's right to the easement in question distinctly and exclusively on the ground of adverse user. The pleadings show that the estates, which, it is contended, hold to each other the relation of dominant and servient, originated in distinct and perfectly independent sources of title; the case, therefore, stands free from any claim of right to a servitude arising by implication.

There are cases, both ancient and modern, which adjudge that an easement of the character under consideration may be created by an implied covenant. It was said, in *Palmer* v. *Fletcher, 1 Lev. 122,* decided in 1675 : "If I have a house with certain lights in it, and lands adjoining, and I sell the house, but keep the land adjoining, neither I, nor any one

claiming under me, can obstruct the lights by building on
the land I retained, for, by selling the house, I sell an ease-
ment in the lights also." And Chief-Justice Holt, in 1705,
in referring to *Palmer* v. *Fletcher*, when pronouncing judg-
ment in *Tenant* v. *Goldwin, 2 Ld. Raym. 1093*, said: "But,
if I had sold the vacant piece of ground and kept the house,
without reserving the benefit of the lights, my vendee
might build against my house. But, in the other case,
where I sell the house, the vacant piece of ground is by
that grant charged with the lights."

It would seem to be unquestionably just that such an
implication should be made whenever the easement is
necessary to the full use and beneficial enjoyment of the
thing granted. The validity of an easement thus created
was recognized in *Story* v. *Odin, 12 Mass. 157; United States*
v. *Appleton, 1 Sumn. 502*. The pertinent maxims are : " No
man shall derogate from his own grant," and " Whoever
grants a thing, shall be understood to grant, also, whatever
is indispensable to the full beneficial enjoyment of it."

So far as I am aware, the question under consideration is
untouched by a single common law adjudication of this
state, and the complainant might, therefore, very properly,
be turned away simply because both his right, and the law
on which he rests it, are as yet unestablished and unrecog-
nized in such manner as to entitle him to the aid of a court
of equity. But the question is not a new one in this court.
It has twice been the subject of judicial consideration.
First, in 1838, by Chancellor Pennington, who, in *Robeson*
v. *Pittenger, 1 Gr. Ch. 64*, said that, as a general rule, in a
case of ancient lights, where they have existed for upwards
of twenty years, undisturbed, the owner of the adjoining
lot has no right to obstruct them; particularly so if the
person who built the house also owned the adjoining lot,
and then subsequently sold the house, but kept the lot.
He, however, admitted that the enforcement of this doctrine
in populous cities, where land is very valuable, and where
it is the constant practice to place buildings side by side,

would be productive of great injustice. It is proper, also, to remark, that it is quite obvious, even upon a cursory perusal of the opinion, that the conclusion reached in that case rested mainly on the idea that an easement there had been created by an implied covenant not to obstruct, rather than by adverse user. .

The second case, *King* v. *Miller*, *4 Hal. Ch. 559*, was decided by Chancellor Halsted, in 1851. No allusion is made to the previous case, or to any other adjudication or dictum, nor is there anything in his opinion which will justify the belief that the subject was at all considered in the light of either antecedent or cotemporaneous investigations, and yet the opinion presents a very accurate epitome of all the decisive considerations which have induced the tribunals of this country very generally to repudiate the doctrine. He thus combats it: "Where one has a right to put up a building on the spot where he erects it, and to continue it there, and the adjoining owner can do nothing to prevent its erection there, and can do nothing to prevent its remaining there, it is absurd to say that the latter can, by lapse of time, lose his right to build up to his line. A person, by making an erection on his own property, which he has a right to make and continue there, and which the adjoining owner has no means of preventing, can thereby acquire no right injurious to his neighbor." The same view, in a much more amplified form, will be found expressed in *Parker* v. *Foote, 19 Wend. 309; Meyers* v. *Gemmel, 10 Barb. 537; Carrig* v. *Dee, 14 Gray 583; Ingraham* v. *Hutchinson, 2 Conn. 584; Cherry* v. *Stein, 11 Md. 1; Napier* v. *Bulwinkle, 5 Rich. 311; Haverstick* v. *Sipe, 33 Pa. St. 371; Ray* v. *Sweeney, 6 Reporter 74; Sterin* v. *Hanch, 17 Am. Law Reg. (N. S.) 435 and note; Hilatt* v. *Morris, 10 Ohio St. 530; Mullen* v. *Stricher, 19 Ohio St. 135; Morrison* v. *Marquardt, 24 Iowa 35.* And the following text writers state that the doctrine has received but a limited recognition in this country, and that even the states which, in early times, gave it the most cordial recognition, have

Hayden *v*. Dutcher.

now either discarded it entirely or greatly modified it. *Wood on Nuisances 152 § 153; Washburn on Eas. 497 § 17; 3 Kent's Com. 448.*

The argument in exposition of the infirmities of the doctrine, is, I think, presented more forcibly by Justice Bronson, in *Parker* v. *Foote,* than in any opinion or disquisition that has come under my notice. Stated in substance, his argument is this: A grant may be rationally presumed where the user, if not rightful, has been an immediate and continuing injury to the person against whom the presumption is made. His property has either been invaded, or his beneficial interest in it has been rendered less valuable. If one commits a daily trespass on the land of another, under a claim of right to pass over, or feed cattle upon it, or divert the water from his mill, or throw it back upon his land or machinery, the injury is of such a character that he may have immediate redress by action; and if he stands by, acquiescingly and unresistingly, his conduct affords strong presumptive evidence that the acts done against his property were done of right. But, in the case of windows overlooking the land of another, the injury, if any, is merely ideal and imaginary. The light and air which they admit are not the subjects of grant, nor of property beyond the moment of actual occupancy. In such a case there is no adverse user, nor, indeed, any use whatever of another's property. No foundation is, therefore, laid for indulging in any presumption against the rightful owner.

The claim of the complainant might very properly be rejected at this point, not only on the authority of the judgment pronounced in *King* v. *Miller,* but also on the further ground that the legal principle which he must invoke to support it, is, in the almost unanimous judgment of the judicial mind of the country, opposed to reason and justice.

But another consideration remains to be adverted to. Justice Bronson, in the opinion of which conspicuous mention has already been made, says that it would be very difficult to prove that the rule in question was known to the

common law at the time the American colonies declared
themselves independent of the crown of Great Britain. A
judgment pronounced by the court of queen's bench, in
1588, is reported in *Cro. Eliz., Bury* v. *Pope*, in which it is
said that it was agreed by all the justices, that if two men
be the owners of two parcels of land adjoining, and one of
them doth build a house upon his land and makes windows
and lights looking into the other's land, and this house and
lights have continued for the space of thirty or forty years,
yet the other may, upon his own soil, lawfully erect a house
against the other's lights and windows, and he can have no
action, for it was his own folly to build his house so near to
his neighbor's land; and it was adjudged accordingly. At
this date, a user to raise a right by prescription, must have
continued " during time whereof the memory of man run-
neth not to the contrary," or from the beginning of the
reign of Richard I. Hence, it may be said that this
case cannot be held to have decided that such right could
not be created by prescription, but it may also be answered
that it did not decide that it could. The first case that
I have been able to find, recognizing the doctrine, is men-
tioned in *2 Saund. 175a*, under the title of *Lewis* v. *Price*.
It was decided by Wilmot J., at the Worcester spring
assizes of 1761, and the right was there allowed on a user
of forty years. The same judge, at common bench sittings
in 1769, upheld the right on a user of fifty or sixty years.
*Dougal* v. *Wilson, 2 Saund. 175b.*

The reports furnish no evidence of a decision by the
court of king's bench, in which the doctrine was recognized,
earlier than *Mich., 29 Geo. III (1786)*. In that year the
right seems to have been expressly and fully recognized on
a user of twenty years. *Darwin* v. *Upton, 2 Saund. 175d.*
If this was the first sanction the doctrine received at West-
minster Hall—and it is the first, I think, of which any relia-
ble evidence can be found—it is clear it was no part of the
common law put in force here by the constitution of July

2d, 1776, and never constituted a part of the common law of this state.

Chancellor Bates, recently, in a very learned and vigorous opinion, attempts to show that the doctrine in question constituted part of the common law of England long prior to the American Revolution. *Clawson* v. *Primrose, 15 Am. Law Reg. (N. S.) 6.* He admits, however, it was not recognized by the king's bench, on a user of twenty years, prior to the decision in *Darwin* v. *Upton,* in 1786, but says, when the period of user was reduced from sixty to twenty years, as the period within which a presumptive title might be acquired to any one of the many incorporeal rights recognized by the common law, it was reduced as to all. Stated in his own language, his argument is this : " Whenever the ancient prescriptive period of immemorial user, measured at first from the reign of Richard I, as a fixed period, and afterwards by sixty years, was abandoned as to immemorial rights finally, and, in lieu of it, the rule of twenty years, by analogy to the statute of James, was adopted by judicial decisions, which applied the modified rule to any incorporeal right whatever, it became thenceforth the law of all incorporeal rights, and, as well, the law of title to the enjoyment of light and air as to any other species of right. For the rule of analogy when applied to the first species of incorporeal right which called for its application, was adopted as the law of the whole, and thus became, by judicial decision, the law of the whole." This conclusion seems to me to be a palpable *non sequitur.*

An adjudication that an adverse user of a right of way, over the lands of another, for twenty years, shall establish a presumptive right to such way, adjudges, neither as a matter of fact or law, that even a similar right, though different in name, will be upheld upon a like period of user. It may be sufficient to raise an expectation that such will be the course of judicial action, but it does not so establish the law. A right of way and a right to the enjoyment of light and air, are both, according to the English notion, properly denomi-

Hayden *v.* Dutcher.

nated incorporeal rights, but the distinction between them is so marked and fundamental that, it seems to me, any reasoning concerning · them, based simply on analogy, must prove fallacious.   The first can be acquired only by positive open acts of invasion and trespass, but the other springs from the simple use of one's own property in a lawful manner, and the mere failure of the adjacent owner to occupy his land with any sort of structure which will obscure light and obstruct air.   Between such things there is no analogy, and there can be no just reasoning about them by comparison.

But further criticism of the opinion is unnecessary.   It is enough to say of the doctrine under consideration, it is utterly unsuited to our condition, and cannot be enforced here without producing the most disastrous consequences. It is certain, it was never directly sanctioned at Westminster Hall until after our separation from Great Britain, and it is equally clear, I think, that the view that it constituted part of the common law prior to that time, has no support whatever, except in an argument based entirely on analogy. Such evidence is quite too feeble, when it is remembered that even the ancient doctrine of prescription has never been adopted in this state (*Ackerman* v. *Shelp, 3 Hal. 125 ; Allen* v. *Stevens, 5 Dutch. 513*), to authorize the recognition of the doctrine by this court.   To justify the introduction or maintenance of a rule so certain to produce mischievous results, the court must be able to ground it upon something more satisfactory and more convincing than the doubtful evidence of a strained presumption.

I conclude, · therefore, that the right the complainant claims is no part of the property system of this state, and that the injunction he asks must be refused, and his bill dismissed, with costs.