<em>New-Haven,</em><br>July, 1834.<br>———<br>Dexter<br><em>v.</em><br>Hitchcock.

———◆———

### BUDDINGTON and others *against* BRADLEY.

The owner of land through which a watercourse passes, has a right to the flow of the water, in its natural course, without diminution or alteration.

This right may be qualified, by the use of another interfering with it, for fifteen years ; and the right of the latter, so far as it depends upon use, will be measured by the mode and extent of such use.

But the right which the riparian proprietor, as such, has, is not qualified or affected, by the mode or extent of his own use, during any period of time.

Therefore, where *A*, the owner of land through which a watercourse passed, had, for more than fifteen years, used the water for his mill, by taking it out of its natural course, through a race-way, into a reservoir, and thence to his mill; and *B*, the owner of land on the same stream above, afterwards obstructed the flow of the water, in its natural course, whereby *A* sustained an injury ; it was held, that *B* was liable, although *A* had a short time previously to the act complained of, varied his mode of using the water, by dispensing with his reservoir, in consequence of which more water was needed at his mill, and by this means alone, the obstruction became injurious to him.

THIS was an action on the case, for obstructing a watercourse, which passed through the plaintiffs' land, and propelled the wheels of a mill owned by them, by which they sustained damage.

The cause was tried at *New-Haven, October* adjourned term, 1833, before *Williams*, J.

Buddington
*v.*
Bradley.

The plaintiffs claimed to have proved, that they and those under whom they claimed, had, for more than a century, enjoyed the free and uninterrupted use of the *West* river in *New-Haven,* as their convenience required, in its natural course and quantity, through the land now occupied by the defendant to the land of the plaintiffs, and thence, by means of an ancient dam across the river, on the plaintiffs' land, through a race-way, to an ancient mill ; that during the dry season of the year, they had been accustomed to turn the whole current of the water of the stream through their race-way, for the use of their mill, without interruption ; that the defendant, and those under whom he claimed, within fifteen years, had erected, on their own land, above the plaintiffs' mill, a dam and mill, whereby the natural flow of the water, in its progress to the plaintiffs' mill, was obstructed, and such obstruction was particularly injurious to the plaintiffs in a dry season ; that shortly before the commencement of the action, during a dry season in the month of *August,* the defendant, by means of his dam and mill, interrupted the flow of the stream so as to prevent its coming into the plaintiffs' race-way, or to their mill, in sufficient quantity to move the water-wheel ; by which they were injured and delayed in their business.

The defendant claimed, that the mill privilege now owned by the plaintiffs, was, until the year 1793, used for a grist mill ; then, and until recently, for a cotton manufactory ; and now, for a paper mill ; that formerly, the water was conducted to the mill, by means of an obstruction across the stream, turning the water therefrom into a side-cut or race-way, and conducting it into an artificial reservoir, whence, by another race-way, it was conducted to the ancient mill ; that in 1825, the owners of that mill made a new and enlarged race-way, a short distance from the former one, so as to carry the water to their mill directly, and not through the reservoir ; in consequence of which, more water was required at their mill than formerly. The defendant then claimed, that if the race-way and reservoir had remained in their former state, the stoppage of the water by him would not have affected the plaintiffs' wheel, or done any injury whatever. The defendant also claimed, that the season was so dry, that there was not, at this time, water enough in the natural stream to move the plaintiffs' wheel. He, therefore, requested the court to instruct the jury, that the

New-Haven,
July, 1834.

Buddington
v.
Bradley.

plaintiffs had no right to an exclusive use of the water beyond the extent of the use they had actually made of it; and that, if they should find that no injury would have been sustained by the plaintiffs, if their race-way had been continued in its ancient place and of its ancient dimensions, and had been used in connexion with their reservoir, as formerly; or if they should find, that the plaintiffs' wheel, in a dry season, such as existed at the time of the supposed injury, could not have been moved at all, without the aid of the reservoir, they must return a verdict for the defendant.

The court charged the jury, that if they should find, that the plaintiffs and those under whom they claimed, had, for more than fifteen years prior to the obstruction raised by the defendant and those under whom he claimed, enjoyed the uninterrupted flow of the water, to use at their pleasure, without obstruction; and if they should also find, that the plaintiffs had sustained an injury, by the obstruction caused by the defendant, as claimed by the plaintiffs; then they must find a verdict in their favour.

A verdict being given for the plaintiffs, the defendant moved for a new trial, for a mis-direction.

*Sherman* and *Mix*, in support of the motion, contended, 1. That the actual use of the water, by the plaintiffs, in manner and extent, was the measure of their right derived from prior enjoyment. 3 *Kent's Com.* 356. *Bealy* v. *Shaw* & al. 6 *East* 208. *Stanley* v. *White*, 14 *East* 339, 340. *Martin* & al. v. *Goble*, 1 *Campb.* 322. That no such right can be acquired, by any enjoyment short of fifteen years, will be admitted. Now, it appears from the motion, that the plaintiffs had used the water in the manner they did when the alleged injury took place, for about eight years only, *viz.* since 1825. Consequently, they acquired no enlargement of their prior right, by their enjoyment, during this period. But if their right is to be measured, by their previous enjoyment, and by that only, they have sustained no injury, of which they can complain; for taking the claim of the defendant in connexion with the charge, it now appears, that if the plaintiffs had confined themselves to the exercise of that right, the obstruction complained of would not have affected their wheel, or done any

injury whatever. The inconvenience, which, in fact, resulted to the plaintiffs, was *damnum absque injuria.*

2. That if the defendant did not trench upon any exclusive right of the plaintiffs, acquired by fifteen years enjoyment, he is not liable for the reasonable use of the water at his mill. It came to him first; and he might well use it, letting it then flow on. 3 *Kent's Com.* 354. The claim of the plaintiffs is founded on an *exclusive* right in them, and a violation of *that* right, by the defendants, to their injury. This foundation failing, the action fails.

*R. S. Baldwin,* contra. All the material facts, on which the parties were at issue, were submitted to the jury, and were found in favour of the plaintiffs. These facts established in the plaintiffs the *right* claimed in the declaration. 2 *Conn. Rep.* 591. The right, thus acquired, was to the free and unobstructed flow of the water, not to any particular *manner* of using it on their own land. They were at liberty to use it *as they pleased,* on their own land, doing no injury to others, independently of usage. The right which remained to the defendant, or those under whom he claims, was, simply, to use the water, without any detention or obstruction whatever. His original right was gone. Whenever the stream was abundant, and not obstructed or altered in its flow, by the use of it, the defendant might lawfully use it; but in dry seasons, when it could not be used without interruption, he became liable to an action, if any injury was caused, by his use of it.

The right claimed by user, to divert or flow back water, to the prejudice of another, is measured by the extent and manner of the use. But the defendant, having no right in himself to detain the water, is not affected by, and has no concern with the use, which the plaintiffs make of the stream on their own land.

It may be admitted, that the plaintiffs could not sue for a mere violation of their right, unless actual injury had been sustained, though there are strong opinions to the contrary. See *Ang. Wat.* 52. *Hobson* v. *Todd,* 4 *Term Rep.* 71. *Mason* v. *Hill* & al. 3 *Barn. & Adol.* 304. (23 *Serg. & Lowb.* 76.) But however that may be, it is well settled, that they have a right to recover, notwithstanding the injury by the obstruction or diversion, was to a new or enlarged establishment,

within the limits of their right. *Mason* v. *Hill* & al. (before cited.) *Wright* v. *Howard*, 1 *Sim. & Stu.* 190. (1 *Cond. Eng. Chan. Rep.* 95.) *Saunders* v. *Newman*, 1 *Barn. & Ald.* 258. *King* & al. v. *Tiffany* & al. 9 *Conn. Rep.* 162.

The fact that the plaintiffs formerly used reservoirs on their own land, to enable them to use the water more beneficially, or to retain it longer, does not limit their *right* to have the water come without obstruction. Nor has the defendant any easement in the plaintiffs' land, to require them to continue their reservoir any longer than their own convenience requires. Whether the plaintiffs, therefore, would have been injured, *if* they had continued to use their reservoir, or to apply the water to the same machinery as formerly, is wholly *immaterial*.

The jury have found the facts that the plaintiffs had the right, and that the defendant's obstruction was injurious to them, in the exercise of that right, as claimed in the declaration. If these facts are not sufficient, the objection is on the *record*.

WILLIAMS, J. It was supposed, by the judge who presided at the trial of this cause, that the same principles which decided the case of *King* & al. v. *Tiffany* & al. 9 *Conn. Rep.* 162. were applicable to, and decisive of, this case. There, the plaintiffs, as owners of the upper mill, claimed, that they had a right to have the waters flow over their land and from their mill, as they had been accustomed to flow; and that the defendants, by their dam, had interrupted that natural and accustomed flow. The defendants said, that what they had done would not have injured the plaintiffs, if they had continued to use the water as they had formerly used it; but by lowering their hammer-wheel, the injury was brought upon themselves, and would not have happened but for that act. This court, however, held, that the plaintiffs had a right to have their water flow off as it had been accustomed to flow; and that, if the plaintiffs suffered from such interruption of the defendants, they might recover, although they had not used the water precisely in the same manner, for fifteen years.

In this case, the relative situation of the parties, is reversed; but the principle is the same. The proprietors of the banks and mills below, claim, not that the water is set back upon them, but that it is kept back from them, and not suffered to

*New-Haven,*
*July, 1834.*
———————
Buddington
*v.*
Bradley.

flow as formerly. The defendant says, true; but if you had not altered your race-way, or taken away your reservoir, this would not have hurt you; [if you had not lowered your hammer-wheel, it would not have hurt you.] If the alterations made, in that case, by the plaintiffs, did not justify the defendants, neither can the alterations made by the plaintiffs, justify this defendant.

The obstruction of the natural course of a stream, is always done at the risk of being answerable in damages to him who sustains a loss thereby. The inquiries, then, are, has the defendant obstructed the natural flow of the water; and have the plaintiffs sustained an injury thereby? The defendant, indeed, may protect himself in the obstruction, by an enjoyment for a certain time; but without that, he can have no defence. Such were the principles recently adopted by the court; and they still seem to me decisive of this case. The only distinction that exists between that case and this, is, that by the report of that case, it does not appear, that the plaintiffs altered the flowing of the water at all, as they have done in this. It was apparent, however, that by lowering their hammer-wheel, they changed their use of the water: they passed it in a different manner from what they had been accustomed to do. Of course, their claim was not founded upon their enjoyment of it, in any particular manner. The argument for the defendants was there, as well as here, that the plaintiffs had a right to enjoy the water as they had done, for a period of thirty years; and if the defendants could use the water profitably to themselves, without injury to the plaintiffs' wheel, *as it then stood,* they had the right so to do. That is the precise argument here. There, too, the plaintiffs claimed as here, that they had a right to have the water flow as it had been used to flow upon their own site. The court also held here, as they did there, that the plaintiffs, by the use they hade made of the water, lost none of their natural rights.

It seems to me, that the argument for the defendant, confounds the natural rights of the riparian proprietor with the acquired right of the person who has enjoyed the water in a particular manner for a certain time—fifteen years in this state, twenty in *England.* The latter acquires a right, by continued enjoyment, the extent of which is measured by the extent of the enjoyment. But the riparian proprietor has an-

nexed to his lands the general flow of the stream, so far as it has not been actually acquired, by some prior and legally operative appropriation. Per *Story*, J. in *Tyler* & al. v. *Wilkinson* & al. 4 *Mason*, 403. And such proprietor has naturally an equal right to the use of the water which flows in the stream adjacent to his land, as it was wont to flow, without diminution or alteration. 3 *Kent's Com.* 439. (2d ed.) And in *Shury* v. *Piggot*, 3 *Bulstr.* 339. *Whitlock*, J. says, that a water-course begins *ex jure naturæ*, and having taken a course naturally, it cannot be diverted. And *Hale*, Ch. J. says, in *Cox* v. *Matthews*, 1 *Vent.* 237. that "if a man has a water-course running through his ground, and erects a mill upon it, he may bring his action for diverting the stream, and not say *antiquum molendinum ;* and upon the evidence it will appear, whether the defendant hath ground through which the stream runs before the plaintiff's, and that he used to turn the stream *as he saw cause ;* for otherwise he cannot justify it, though the mill be newly erected." And *Story*, J., in the case before cited, says : " In their character of *mill-owners*, they have no title to the flow of the stream, beyond the water actually and legally appropriated to the mills ; but in their character of *riparian proprietors*, they have annexed to their lands the general flow of the river, so far as it has not been already acquired by some prior and legally operative appropriation." 4 *Mason*, 403.

In this case, the plaintiffs have a right to have the water come to them in its natural and accustomed course, not by their artificial channel or into their artificial reservoir, but to flow within its banks, through their lands, as it was wont to flow. This right they claim, not as mill-owners, but as riparian proprietors. The defendant objects, that the plaintiffs have not used the water, in the same manner as they now use it. The answer to that is, that the plaintiffs' right to the water does not depend upon their use of it, or their prior occupancy, but upon their *natural* right to have it flow as it has been accustomed to flow. Their damages may depend upon their application of it : not, however, upon their general past application, but upon their application when it was interrupted. On the contrary, as the defendants claim to interrupt the natural flow of the water, they must shew a use for fifteen years or more, to justify them in their claim. Thus in *Bealy* v. *Shaw*

& al. 6 *East*, 208. 216. the suit was brought in 1799. The plaintiff's works were erected in 1787. The defendants' works were ancient; but the particular cause of damage existed only since 1791; and yet the plaintiff recovered. And Lord *Ellenborough* says : " Independant of any particular enjoyment used to be had by another, every man has a right to the advantage of a flow of water in his own land, *without diminution or alteration*." And *Grose*, J. says : " The plaintiff had a right to all the water flowing over his own estate, subject only to the easement the defendants might have" acquired. And in a recent case, that of *Mason* v. *Hill* & al. 3 *Barn. & Adolp.* 304. (23 *Serg. & Lowb.* 76.) the plaintiff and defendants having lands contiguous, the defendants being above, in 1818, the defendants, by a weir or dam, diverted the water from its natural course. About ten years after, the plaintiff made a channel in his own land, contiguous to the stream, for some manufacturing purposes not previously carried on there. Lord *Tenterden* cited, with approbation, *Wright* v. *Howard*, 1 *Sim. & Stu.* 190. and added : " We are all of opinion that the defendants did not acquire a right, by their appropriation, against the use which the plaintiff afterwards sought to make of the water."

Unless, then, there be a difference between the diverting of water and the obstructing of it, I can see no difference between those cases and this.

What degree of obstruction, where there is no malice, shall be the foundation of an action, must always be a question for the sound discretion of the triers. That question was explicitly submitted to the jury; and they have found the injury to the plaintiffs. It seems, therefore, to me, that there is no ground for a new trial.

The other Judges were of the same opinion, except PETERS, J., who was absent.

New trial not to be granted.