*Litchfield,*
June, 1836.

Landon
*v.*
Sage.

---

## TUCKER *against* JEWETT.

In *July*, 1813, *A* conveyed to *E* a small tract of land, through which flowed a stream of water, issuing from a pond about thirty rods above ; and immediately afterwards, *E* erected a trip hammer shop on this land, propelled by the stream. In *July*, 1814, *B*, being the owner in fee of two tracts of land, one at the outlet of the pond, having on it a dam, and the other on the stream, below *E's* shop, having on it a saw-mill and grist-mill, conveyed these tracts of land, with all the privileges that the grantor had therein, to *C, D* and *E* ; *B*, and those under whom he claimed, having

*Litchfield,*
*June 1836.*

Tucker
*v.*
Jewett.

used the stream, flowing in its natural channel, without interruption, for more than fifteen years immediately previous to such conveyance, to operate these mills. In *September*, 1814, *C, D* and *E* made partition of the property so conveyed, by executing release deeds to each other. The deed executed by *C* and *D* to *E*, conveyed to *E*, in severalty, the property bought of *B*, except the saw-mill and grist-mill, with the privileges of water, and mill-yards for the same, lying below *E's* shop. *D* and *E*, by their deed to *C*, conveyed to *C* the grist-mill and pond, without any reservation of privileges. *C* and *E*, at the same time, conveyed to *D* their interest in the saw-mill, and site above the grist-mill, with the privileges of mill-pond, and one half of the fall of the water, from *E's* shop to the grist-mill. In *May*, 1817, *E* conveyed to *C* and *B*, all the interest which he had in the land on the stream, including the trip-hammer shop; and in *September*, 1822, *C* and *B* re-conveyed the same property to *E*. In 1818, *C* erected a new saw-mill on the site of his old grist-mill. In 1822, soon after the re-conveyance to *E*, he erected a stone dam across the stream, on his land, to operate his trip-hammer shop; the erection and continuance of which, so obstructed the flow of the water to *C's* saw-mill, as that he sustained essential injury thereby. In an action brought by *C* against *E*, for such obstruction, it was held, 1. that *B*, the grantor of *C*, by his unmolested appropriation of the water, for the use of his grist-mill, for a period of more than fifteen years, if not as riparian proprietor and first occupant, had a right to use the water *ut currere solebat:* 2. that this right having once existed as an appurtenant to the grist-mill, passed with it from *B* to *C*, and existed in *C*, for the use of his saw-mill, standing upon the same site: 3. that this right was not extinguished or impaired, by either or all of the deeds of partition: 4. that it was not extinguished or impaired, by the deed of *May*, 1817, from *E* to *C* and *B;* the doctrine of extinguishment by reason of unity of title, not being applicable to this case, because *C* was only tenant in common with another, of the privilege above; because there was no surrender by *C*, of his sole right for the benefit of the tenants in common, but, on the contrary, they recognised the preferable privileges of the grist-mill; because the right of *C* was not a mere easement in the land; and because the right to a water-course, from its nature, is an exception to the general rule regarding unity of title: 5. that the deed of re-conveyance from *C* and *B* to *E*, in *September*, 1822, neither impaired the right of *C*, nor conferred on *E* any new additional rights: 6. that the right of *C* being established, *E* was not justifiable in using the water of the stream, for the purposes of his shop, even in a reasonable manner, to the essential injury of *C's* mill.

THIS was an action on the case for the obstruction of a water-course, brought in *April*, 1834. The declaration averred, that the plaintiff then was, and for more than fifteen years last past had been, the owner and occupant of a saw-mill, standing on a stream, called *Beaver Brook;* that the plaintiff then had, and for more than twenty years last past had had, the right to use the water of said stream, for the purpose of propelling and working said mill and the machinery thereof; yet that the de-

fendant, on the first of *April*, 1834, erected a dam across said stream, and thereby obstructed the waters thereof from flowing to the plaintiff's said mill, whereby the plaintiff has been interrupted in the enjoyment of his right.

The cause was tried at *Litchfield, February* term, 1836, before *Church,* J.

By a deed, dated the 27th of *July*, 1813, *Lomar Griffin* conveyed to the defendant and *John P. Oviatt*, a small tract of land, containing one acre, situated on both sides of a stream called *Beaver Brook*, which issued from a pond about thirty rods therefrom. On the 4th of *March*, 1815, *Oviatt* conveyed to the defendant his interest in this land. On the 11th of *July*, 1814, *Roswell Marsh* conveyed to the plaintiff, *Oviatt* and the defendant, a tract of land containing sixty acres, and all the privilege that the grantor had to the same, lying in two pieces, one of which contained the dam at the outlet of the pond, and the other was farther down the stream, having thereon a grist-mill and a saw-mill. Immediately after the execution of *Griffin's* deed to the defendant and *Oviatt*, the grantees erected a trip-hammer shop on their lot, at a point on the stream between the old dam at the outlet of the pond, and the saw-mill and grist-mill below. On the 23d of *September*, 1814, these grantees made partition of the property so conveyed to them, by executing release deeds to each other. The deed from the plaintiff and *Oviatt* to the defendant, released all their right in the land, " excepting the grist-mill and saw-mill, with the privileges of the water and mill-yards for the same, that is below the trip-hammer shop." The deed from the defendant and *Oviatt* to the plaintiff, conveyed their right in " the piece of land lying near the pond, with a grist-mill standing thereon, and to contain land sufficient for mill-pond, and room sufficient to get to and round the same, with one half of the privilege of the fall of the water from the grantors' shop to the said mill." The deed from the plaintiff and defendant to *Oviatt*, conveyed their right in " a piece of land lying on the stream running from the pond, being a seat for one saw-mill, with the privilege of mill-pond and one half of the fall of the water from *Jewett's* and *Oviatt's* shop to the grist-mill, with all the land that now lies open in common *South* of the brook, for the privilege of a log way, together with the old saw-mill, with all that appertains to the same." On the 4th of

VOL. XI. 40

*March,* 1815, *Oviatt* conveyed to the plaintiff all the interest which he then had in the property above and below the trip-hammer shop. On the 21st of *May,* 1817, the defendant conveyed to the plaintiff and *Marsh,* all the interest which he had in the land on said stream, including the trip-hammer shop; and on the 9th of *September,* 1822, the plaintiff and *Marsh* reconveyed the same property to the defendant. In the year 1818, the plaintiff erected a new saw-mill on the site of the old grist-mill. In 1822, soon after the re-conveyance, the defendant erected a stone dam across the stream on his land, for the purpose of operating his trip-hammer shop.

The plaintiff, in order to show, that he had, after the erection of said dam, the right to enjoy the stream of water from the pond to the saw-mill, without interruption, for the purpose of operating his saw-mill, offered testimony to prove, that for more than fifteen years before the date of *Marsh's* deed to the defendant, the plaintiff and *Oviatt, Marsh* and those under whom he claimed, had used the stream to operate said ancient mills, without any molestation or interruption whatever; and that the stream had, during that period, flowed, in its natural channel, uninterruptedly, from the pond to the mills. To this testimony the defendant objected; but the judge admitted it.

The plaintiff, also, for the same purpose, offered testimony to prove, that from the date of *Marsh's* deed, to the erection of the defendant's dam, in the fall of 1822, the plaintiff had used the stream to propel the ancient mills, until 1818, and his new saw-mill afterwards, without any essential interruption from the works of the defendant on his lot above. To this testimony the defendant also objected; but the judge admitted it.

The plaintiff also offered testimony to prove, that the defendant's dam was so erected as to accumulate water upon the surface of the pond; that it was much higher than the outlet of the pond; and that the flow of the water in the stream, had, by means of such dam, been so interrupted, as to nearly render the plaintiff's saw-mill useless to him. The defendant denied the truth of these facts, and claimed to have proved, that the plaintiff had, at all times, enjoyed the uninterrupted flow of the water, over the defendant's dam, and through his gate; and that, at any rate, he had only so far interrupted the flow of the water, as was necessary to enable him to enjoy, in a proper and reasonable manner, the privilege which he claimed at his trip-

hammer shop ; and also, that he had only so erected his dam as to enable him to take advantage, in a reasonable manner, of the fall of the water from the pond to his shop.

The defendant requested the judge to instruct the jury, that by virtue of the deed from *Griffin*, he, the defendant, became interested in a privilege at the trip-hammer shop ; and that if they should find, that he had only so far interrupted the stream as to enable him to enjoy his privilege, in a reasonable and proper manner, he was entitled to a verdict in his favour; also, that if he only raised his dam so high as to enable him to take benefit of the fall of the water from the pond to his shop, in a reasonable and proper manner, the interruption thereby occasioned, would not subject him ; and that if he had erected his dam of a suitable height to enable him to improve his privilege, the plaintiff could not recover any damage, which he may have sustained, by means of an unreasonable and improper use, by the defendant, of his privilege.

The judge charged the jury, that if they should find, that the plaintiff, and those under whom he claimed, had, for more than fifteen years prior to the erection of the dam at the trip-hammer shop, by the defendant, enjoyed the uninterrupted flow of the water, to use at his pleasure, to propel the ancient grist-mill, or the saw-mill erected on the same site, without obstruction : and if they should also find, that the erection and continuance of the dam, by the defendant, so obstructed the flow of the water, at the plaintiff's saw mill, as that he had sustained essential injury thereby, within six years next before the commencement of this action, he had a right to recover. The judge refused to charge the jury as claimed by the defendant.

The plaintiff obtained a verdict ; and the defendant moved for a new trial.

*W. W. Ellsworth* and *T. Smith*, in support of the motion, contended, 1. That there could be no right acquired by the plaintiff, by virtue of any peculiar use or appropriation of the water, for fifteen years before 1822, when the defendant built this dam ; because in 1814, from *July* to *September*, the defendant was a joint owner with the plaintiff, of the plaintiff's water privilege. The unity of title of the plaintiff and defendant, does away the effect of any adverse or particular use to the stream ; and hence the right of the plaintiff must rest up-

*Litchfield,*
June, 1836.

Tucker
*v.*
Jewett.

*Litchfield,*
*June, 1836.*

Tucker
*v.*
Jewett.

on his natural right, or as riparian proprietor. So, the ownership of the fee in 1814, by the defendant, extinguished all easements in him and them. The plaintiff was owner of the premises now owned by the defendant, from 1817 to 1822 ; and hence the plaintiff, during that time, could not be acquiring any adverse right. *Manning* v. *Smith,* 6 *Conn. Rep.* 209.

2. That the riparian proprietor cannot sue a proprietor *above*, for erecting a dam, sufficient only for a just and necessary use of the water. If so, then on moderate streams, the proprietor of its mouth, or a mere riparian proprietor, can prevent any owner, *above*, using the stream, by a dam. No such doctrine has been established in *Connecticut ;* but the cases all show, that the plaintiff has always founded his claim upon a peculiar appropriation of the water, by a dam, or otherwise, for fifteen years ; or that his premises have been *flowed.* Every case shows, that where the plaintiff sued a proprietor above him, he actually used, by a mill, his privilege below, for fifteen years ; and if he sued a proprietor below, that the water was set back differently from what it had been, for the fifteen years previous.

Thus, in *Sherwood* v. *Burr,* 4 *Day* 244., the defendant set water back on the plaintiff. In *Ingraham* v. *Hutchinson,* 2 *Conn. Rep.* 584., the plaintiff rested his case, exclusively, upon a peculiar use and actual appropriation of the water by him. The court put his right to recover, on that ground. In *King* & al. v. *Tiffany* & al. 9 *Conn. Rep.* 162., water was set back on the premises of the plaintiff. In *Twiss* & al. v. *Baldwin* & al. 9 *Conn. Rep.* 291., the defendant made a *malicious* use of his dam. In *Buddington* & al. v. *Bradley,* 10 *Conn. Rep.* 213., the plaintiff below claimed, that by virtue of an appropriation to his mill, for fifteen years, he had a right to have the whole stream flow to him at his pleasure, whether he used it or not ; and the court put the case on the ground of *King* v. *Tiffany,* an invasion of acquired rights. But this case is decided in the case of *Platt* v. *Johnson,* 15 *Johns. Rep.* 213. 3 *Kent's Com.* 439.

3. That the language of the deeds is such as to save to the defendant the right to controul the water, in a reasonable manner, at his trip-hammer shop.

*W. G. Williams* and *Holabird,* contra, contended, 1. That the plaintiff was entitled to have the stream flow to his mill,

Litchfield,
June, 1836.

Tucker
v.
Jewett.

*ut currere solebat ;* first, as riparian proprietor ; secondly, by fifteen years' occupation. And if interrupted to his injury, he is entitled to damages. *Bealy* v. *Shaw* & al. 6 *East*, 208. *King* & al. v. *Tiffany* & al. 9 *Conn. Rep.* 162. *Twiss* & al. v. *Baldwin* & al. 9 *Conn. Rep.* 291. *Buddington* & al. v. *Bradley*, 10 *Conn. Rep.* 213. *Ingraham* v. *Hutchinson*, 2 *Conn. Rep.* 584.

2. That the plaintiff has not lost this right. It is not claimed, that he has lost it, by an adverse user. The deeds have not deprived him of it. The deed from *Griffin* to the defendant, gives no greater right than is incident to the land. The deed from *Marsh* to the plaintiff, defendant and *Oviatt*, and the deeds of partition between them, produced no such effect. Has the deed from the defendant to *Marsh* and the plaintiff, and their reconveyance to him, affected the plaintiff's right ? It is said, this is an *easement*, which has been extinguished, by unity of possession of the easement, and the estate which is encumbered by it. But, in the first place, this is not an easement, (if easement it may be called,) which has been acquired by grant or prescription. Secondly, this right has not been extinguished by unity, because the right to the easement, and to the land through which the water flows, have not been united in the same person. Thirdly, this doctrine of extinguishment does not apply to a water-course. *Shury* v. *Piggot*, 3 *Bulstr.* 339. S. C. *Poph.* 166. *Bul. N. P.* 74. *Hazard* v. *Robinson*, 3 *Mason*, 272. 276, 7. 3 *Kent's Com.* 360. *Williams* v. *Morland*, 3 *Barn. & Cres.* 910. (9 *Serg. & Lowb.* 269.) *Mason* v. *Hill* & al. 3 *Barn. & Adol.* 304. (22 *Serg. & Lowb.* 76.) S. C. 5 *Barn. & Adol.* 1. (27 *Serg. & Lowb.* 11.) *Frankum* v. *Earl of Falmouth*, 6 *Carr. & Payne* 529. (25 *Serg. & Lowb.* 526.) *Shears* & al. v. *Wood*, 7 *J. B. Moore*, 345. (17 *Serg. & Lowb.* 76.)

CHURCH, J. For more than fifteen years before either the plaintiff or defendant became a proprietor upon this stream of water, called *Beaver Brook*, and before any other water-works or machinery were erected thereon, except perhaps the old sawmill, a grist-mill had been erected upon the site of the plaintiff's present saw-mill, which, together with a dam and pond appurtenant, had been continued and occupied ; and the water of said stream, as it flowed in its natural and unobstructed course,

for the use of said mill, had been, during all that time, used and appropriated, by one *Roswell Marsh*, and those from whom he had derived title. The plaintiff claims title under *Roswell Marsh. Marsh* and those under whom he claimed, also, during the same time, owned the small piece of land at the outlet of the pond, from which said stream issued, on which was a small dam for the use of said grist-mill below; and at the same time, he owned the land on both sides of said stream, which was situated below the land of *Lomar Griffin*, and on which said grist-mill and dam were, as well as a saw-mill, standing some distance above the grist-mill.

If *Marsh* acquired no special right of water in this stream, as first occupant, it is very certain, that by his unmolested use and appropriation of the water, for the use of his grist-mill, for more than fifteen years, he acquired such a right by prescription, which he could convey to others. *Sherwood* v. *Burr*, 4 *Day*, 244. *Ingraham* v. *Hutchinson*, 2 *Conn. Rep.* 584. *King* v. *Tiffany*, 9 *Conn. Rep.* 162. *Buddington* v. *Bradley*, 10 *Conn. Rep.* 213.

This right, whether it be a special one, or only the natural right of every riparian proprietor, to use flowing water *ut currere solebat*, having once existed, as an appurtenant to the grist-mill, has come, along with said grist-mill, to the plaintiff, exists in him, and may be vindicated and claimed by him, for the use of his present saw-mill, standing upon the same site, unless the defendant, who is now a proprietor of the trip-hammer shop and dam above, on the stream, can establish the fact that he now has, either by grant, licence or prescription, a right materially to diminish the quantity of water, or to obstruct it in its passage to the plaintiff's mill, or that, in some way, the right once existing in *Roswell Marsh* has become extinguished or modified. *Wright* v. *Howard*, 1 *Sim. & Stu.* 190. *Mason* v. *Hill* & al. 3 *B. & Adol.* 304. (23 *Serg. & Lowb.* 76.) S. C. 5 *B. & Adol.* 1. (27 *Serg. & Lowb.* 11.)

The defendant, conceding this position, does claim, that such has been the legal operation and effect of some of the deeds read in evidence at the trial, that the right once existing in *Roswell Marsh* never vested in the plaintiff; and that if it did, it has since become extinguished; and therefore, the defendant objected to the whole of the evidence offered by the plaintiff. It becomes necessary, therefore, to examine, with some care,

the deeds in question, with reference to their operation upon the plaintiff's claims.

The first deed is from *Lomar Griffin* to *Jewett*, the defendant and *John P. Oviatt*, dated *July* 27th, 1813. This deed conveys one acre of land, the same upon which the trip-hammer shop of the defendant stands, and upon which the dam of which the plaintiff complains, was some years afterwards erected. At the date of this deed, *Roswell Marsh* owned the outlet of the pond, as well as the land and privileges of water now in controversy, and had, at that time, used the water as the plaintiff now claims it, for more than fifteen years. *Lomar Griffin*, the grantor in this deed, owned the land on both sides of this stream, below the small dam at the outlet of the pond, and above *Roswell Marsh's* land, on which the plaintiff's mill stands ; but he owned no special water rights, nor any rights which could conflict with the then established rights of *Marsh :* of course, he could convey none. Nor did he attempt to do it ; he conveyed only a *parcel of land* on both sides of the stream. *John P. Oviatt*, by his deed, dated *March* 4th, 1815, conveyed his interest in the same parcel of land, to the defendant.

The deeds next relied upon by the defendant, as supporting his claim, are the deeds from *Roswell Marsh* to *Benjamin Tucker*, the plaintiff, *Allen Jewett*, the defendant, and *John P. Oviatt*, dated *July* 11th, 1814, and the several deeds of partition made by these grantees, on the 23d of *September*, 1814. The aforesaid deed from *Marsh*, conveys all the land, mills, and such privileges of water as he owned, to the aforesaid persons, as tenants in common. At that time, he owned the grist-mill and water privileges now claimed by the plaintiff ; also, the saw-mill and privilege standing above ; and also the small piece of land at the outlet of the pond, as well as other lands lying on the stream below the defendant's trip-hammer shop. These grantees, now being joint owners of the grist-mill and privileges, had power to divert the water or obstruct it, so as to destroy the grist-mill privilege, or to render it subservient to any other use of the water. But they did not exercise such power ; they permitted the water still to flow, unobstructed, for the use of the grist-mill, in the same manner as it had done for more than fifteen years before. Instead of impairing or destroying this privilege, they recognised its existence while joint owners, and, as will be seen, confirmed it, in their subse-

quent partition. The partition deed, executed by the plaintiff and *Oviatt* to the defendant, does not interfere with the grist-mill privilege, but on the contrary, recognises it, and reserves it unimpaired.

By this deed, the defendant becomes entitled in severalty to the property bought of *Roswell Marsh*, "excepting the grist mill and saw-mill, with the privileges of water and mill-yards for the same, that is below the trip hammer shop." This reserved privilege is the same which was acquired and owned, by *Roswell Marsh*, for his grist-mill and saw-mill, and the same now claimed by the plaintiff. The defendant and *Oviatt*, in their partition deed to the plaintiff, convey to him the grist-mill and pond, without any reservation of privileges. The plaintiff and defendant, at the same time, apart and convey to *Oviatt*, the old saw-mill and site above the grist-mill, with the privileges of mill pond and other privileges. These several deeds, executed at the same time, and intended as a partition of the common property, must be treated and construed as one conveyance, in which there is reserved and confirmed in the plaintiff a well known and long established right, with nothing to impair it. It is the same right, which the plaintiff now seeks to protect and enforce. The defendant has not reserved, nor pretended to create, for the benefit of his trip-hammer shop, any other or greater privilege than was appurtenant to it before.

It was quite earnestly insisted, by the defendant, that the expressions in the deed from *Jewett* and *Oviatt* to *Tucker*, and in the deed from *Tucker* and *Jewett* to *Oviatt*, "with one half of the privilege of the fall of the water from *Allen Jewett's* trip hammer shop to the grist-mill," so divided and aparted, or in some way affected the old grist-mill privilege, as to secure equal rights of water to each of these former tenants in common. It is not entirely certain, what precise object the parties had in contemplation, by the use of this language ; but it is quite certain, we think, that they did not intend thereby to curtail any privileges which had before appertained to either the grist-mill or saw-mill ; at least, no reasonable construction of the language used, imports any such intent. If we were to indulge in conjecture, we might very well believe from the facts in the case, that the grist-mill and saw-mill were ancient, and equally entitled, by prescriptive right, to the use of the water in

*Litchfield,*
June, 1836.

Tucker
*v.*
Jewett.

the stream ; and that the intent of the parties was, to preserve this equality of right unimpaired. The plaintiff having afterwards purchased the old saw-mill and its privileges of *Oviatt,* became entitled to the whole right.

But still the defendant claims, that if the right claimed by the plaintiff has ever existed in him, since said partition, it has become extinguished, by the operation and effect of the deed from the defendant to the plaintiff and *Roswell Marsh,* dated *May* 21, 1817. By this deed, the defendant conveyed to the plaintiff and the said *Marsh,* all the land he owned upon said stream, including the trip-hammer shop and the land on which it stands, and where the defendant's dam has since been erected, which causes the obstruction complained of. After the execution of this deed, the plaintiff was sole owner of the grist-mill and privileges, and tenant in common with *Marsh,* of the trip-hammer shop and privileges attached to it. The defendant insists, that the effect of this state of the title, was, to create such a unity of title to these mills and privileges in the plaintiff, as to merge and extinguish all former or special rights and privileges appurtenant to the grist-mill, and which have never since been restored or waived. Whatever the law might be, if the plaintiff had become *sole owner* of the trip-hammer shop and privileges, we should hesitate much before we yielded to the claim made here, that his sole and paramount right at the grist-mill had become extinguished, by his becoming *tenant in common* with another in the up-stream privilege. It is not known, that in cases where the doctrine of extinguishment, by reason of unity of title, applies, it has ever been extended as far as this. We may remark, as we have done before, that the plaintiff and *Marsh,* by unity of action, might have rendered the grist-mill privilege subservient to the convenience of the trip-hammer shop ; for the plaintiff might have yielded his sole rights for the benefit of the tenants in common. But no such surrender was made or claimed : on the contrary, the co-tenants recognised the preferable privileges of the grist-mill, and did not attempt to deny or interrupt them, but suffered the water to flow on, in its accustomed manner, for the use of that mill.

But if the plaintiff had become sole owner of the trip-hammer shop, and all the land above his grist-mill privilege, it would not have operated to extinguish his former rights ; at

*Litchfield,*
*June 1836.*

Tucker
*v.*
Jewett.

most, it would only suspend them. Nor do we clearly discover how it could even do this. To give effect to this claim of the defendant, it is necessary, that he should assimilate the plaintiff's rights to mere easements or servitudes ; such as rights of way over another's close ; or any other rights which exist on the estate of one man for the benefit of another. In such cases, to be sure, unity of title will frequently either extinguish or suspend the easement. 3 *Kent's Com.* 360. And such is the case of *Manning* v. *Smith*, 6 *Conn. Rep.* 209., upon which the defendant more especially relies ; a case in which the plaintiff claimed a right of diverting the water upon the defendant's land, from its natural course, and of conducting it through the defendant's land to his own. But the present is a case of a very different character. The plaintiff here claims no rights or easements, in the defendant's land. To acquire an easement by user, such user must be adverse, and in hostility to the rights of the owner of the land upon which it is claimed to exist. But the right claimed by the plaintiff, if it did not arise from prior occupancy and appropriation of the water, was acquired simply by such user and appropriation for the term of fifteen years, although such user was not so adverse as to have been an usurpation of the rights of others. *Ingraham* v. *Hutchinson*, 2 *Conn. Rep.* 584. The right claimed by the plaintiff, is a natural right, arising *ex jure naturæ,* and not strictly an easement.

There is, also, a distinction between rights which are of necessity, and mere easements. The former, although they may perhaps be suspended, during the existence and continuance of unity of title or possession, are not extinguished by such unity. *Noy*, 84. *Nicholas* v. *Chamberlain, Cro. Jac.* 121. *Bull. N. P.* 74. *Poph.* 172. 3 *Bulst.* 339. 1 *Roll. Abr.* 936. *Whalley* v. *Thompson* & al. 1 *Bos. & Pul.* 371. *in notis.* 3 *Taun.* 24. 2 *Chitt. Bla.* 26. Chancellor *Kent* says : " Nor is a water-course extinguished, by unity of possession ; and this from the necessity of the case and the nature of the subject." 3 *Kent's Com.* 360. And Mr. *Chitty*, in considering this subject, remarks, that " there is a peculiarity relating to a claim of this nature, *viz.*, that it never was destroyed, by unity of seisin of the land and water, and of the place in respect of which the use of the water was claimed ; the law admitting an exception to the general rule, on account of the uncontroulable

nature of water; and that the claim to water is not strictly, by grant or prescription, but *ex jure naturæ.*" 1 *Chitt. Gen. Pr.* 215. Judge *Story*, in reviewing this question and the cases relating to it, in the case of *Hazard* v. *Robinson*, 3 *Mason* 276. expresses very nearly the same sentiments.

Upon this examination of these various deeds, we have discovered nothing, by which, in our opinion, the plaintiff is precluded from insisting upon the grist-mill privilege, as it existed in *Roswell Marsh*, before and at the time of his conveyance to *Tucker*, *Jewett* and *Oviatt.* We do not believe this privilege has been impaired, by any of the deeds read in evidence, nor extinguished, by any unity of seisin or title. Of course, we are of opinion, that the plaintiff's evidence in support of his claim, was admissible.

It was, however, suggested, that the deed from the plaintiff and *Roswell Marsh* to the defendant, dated *September* 9, 1822, by which they re conveyed to him the same property which they had received from him, by his deed of *May* 21, 1817, in some way, had impaired the grist-mill privilege, or had conferred upon the defendant the rights which he has since claimed to exercise. It should here be recollected, that when this re-conveyance was made, the defendant had not erected the dam and obstruction, of which the plaintiff complains: they did not exist, at that time; nor had the defendant, at that time, claimed any right to obstruct the water, to the injury of the plaintiff; so that the defendant acquired no new or additional rights, by virtue of this deed.

A question of much importance was suggested at the bar, which our opinion upon other controuling parts of the case, has rendered it unnecessary for us to decide. The plaintiff claimed, that if the rights of *Roswell Marsh* did not exist in him, the plaintiff, but had been destroyed, by the operation of some of the deeds; yet that from the 9th of *September*, 1822, when he and *Marsh* re-conveyed the trip-hammer, &c. to the defendant, until the obstruction complained of, a period of about twelve years, he had used and appropriated the water of this stream, for the use of his saw-mill, standing upon the grist-mill site, without molestation, in its natural channel and course; and that he had a right and claim to be protected in his appropriation and enjoyment of the water, *ut currere solebat;* and that neither the defendant, nor any other person, had a right,

either to divert or obstruct the water to his essential injury. Upon this question, there are to be found conflicting opinions; and there are many cases which go very far, if not entirely, to support this claim of the plaintiff. 2 *Bl. Com.* 403. 2 *Woodeson,* 391. *Cox* v. *Matthews,* 1 *Vent.* 237. *Hatch* v. *Dwight,* 17 *Mass. Rep* 289. *Striker* v. *Todd,* 10 *Serg. & Rawle,* 69. 3 *Kent's Com.* 358. *Williams* v. *Moreland,* 2 *Barn. & Cres.* 910. (9 *Serg. & Lowb.* 269.) *Mason* v. *Hill,* 3 *Barn. & Adol.* 304. (23 *Serg. & Lowb,* 76.) S. C. 5 *Barn. & Adol.* 1. (27 *Serg. & Lowb.* 11.) *Frankum* v. Earl of *Falmouth,* 6 *Carr. & Payne,* 529. (25 *Serg. & Lowb.* 526.) *Buddington* v. *Bradley,* 10 *Conn. Rep.* 219. *King* v. *Tiffany,* 9 *Conn. Rep.* 166. *Palmer* v. *Mulligan,* 3 *Caines,* 307. *Platt* v. *Johnson,* 15 *Johns. Rep.* 213. *Angell on Water-courses,* 39, 69. *Tyler* v. *Wilkinson,* 4 *Mason,* 401. *Martin* v. *Bigelow,* 2 *Aikins' Vermont Rep.* 184. 3 *U. S. Law Intelligencer,* 164. *Buller* v. *Reynolds,* 2 *N. Hamp. Rep.* 257. *Tinkam* v. *Arnold,* 3 *Greenl.* 120.

The defendant also claimed, that admitting the right of the plaintiff, yet as the defendant had also a right, as riparian proprietor, to use the water of the stream, he had right, reasonably to use it, for the purposes of his trip-hammer shop, even if the plaintiff was subjected to some inconvenience and damage thereby. And exceptions are taken, by the defendant, to the charge of the judge at the trial, because this claim was not recognised by him, as the law of the case. The defendant, in support of this claim, relied much upon the case of *Platt* v. *Johnson,* 15 *Johns. Rep.* 213. It does not become necessary, in this investigation, to suggest a doubt of the correctness of any position assumed by the court, in that case; as, in our opinion, none of them conflict with any principle recognised by us, in this. We have placed the claims of the plaintiff entirely upon his prescriptive rights, or such as were acquired by an uninterrupted use and appropriation of the water, for more than fifteen years. In the case of *Platt* v. *Johnson,* the plaintiff relied merely upon prior occupancy; and the counsel for the defendant notices what he supposed was a material distinction in this particular, and says: " A purchaser of land, over which a stream of water runs, acquires a right to use the water in a reasonable manner, for the ordinary purposes of mills and machinery; *there being no ancient right or prescription in the*

*case.* And if, in the reasonable use of the water for such purposes, the owner of land below suffers any damage, it is *damnum absque injuria.*" And *Thompson,* Ch. J., in giving the opinion of the court, acquiesces in the correctness of this distinction, and justifies the defendant in a partial diversion of the water, and says: "Nor is there any pretence, that the plaintiff had been so long in the previous use and enjoyment of this stream, as to afford the presumption of a grant of the same beyond the boundaries of his own land."

In the case now under consideration, the plaintiff is vindicating, and endeavouring to protect a well established and paramount right ; and such right, we have said, the plaintiff has ; and if this right has been invaded, whereby essential injury has been sustained, was it ever heard of, as a justification or defence, that the defendant has behaved reasonably, in perpetrating his acts of invasion ? The plaintiff is entitled to recover, if he has sustained damage, by the unlawful acts of the defendant, unless the amount of damage is so trifling as to draw to it the application of the maxim, *De minimis non curat lex. Shears* & al. v. *Wood,* 7 *J. B. Moore,* 345. (17 *Serg. & Lowb.* 76.) *Williams* v. *Moreland,* 2 *Barn. & Cres.* 910. (9 *Serg. & Lowb.* 269.)

We are entirely satisfied, that the ruling of the judge, as well as the principles stated in the charge, were entirely correct ; and that no new trial should be granted.

In this opinion the other Judges ultimately concurred ; WAITE, J., who at first dissented, declaring, that he was satisfied with the decision.

New trial not to be granted.